# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

**RONALDO DESIGNER JEWELRY, INC.**                       **PLAINTIFF**

**V.**                                       **NO. 1:17-CV-2-DMB-DAS**

**JAMES B. COX and CATHERINE A. COX**
**d/b/a JC DESIGNS d/b/a WIRE N RINGS**
**and JOHN DOE a/k/a LEROY and JOHN**
**DOES Numbers 1 through 99**                         **DEFENDANTS**

## ORDER DENYING INJUNCTIVE RELIEF

Before the Court is Ronaldo Designer Jewelry Inc.'s "Renewed Motion for Temporary Restraining Order," Doc. #11, which has been converted to a motion for a preliminary injunction pursuant to the parties' agreement.

### I
### Procedural History

#### A. Original Complaint, TRO Motion, and Related Filings

On January 3, 2017, Ronaldo filed a verified complaint against James B. Cox and Catherine A. Cox d/b/a JC Designs d/b/a Wire N Rings; John Doe a/k/a Leroy; and John Does Numbers 1 through 99, alleging copyright infringement, trade dress infringement, and common law unfair competition and unfair trade practices. Doc. #1. Nine days later, Ronaldo filed a motion seeking a temporary restraining order against the defendants. Doc. #4. On January 19, 2017, the Court denied the motion for a temporary restraining order because Ronaldo failed to comply with Federal Rule of Civil Procedure 65's requirements for the issuance of a temporary restraining order without notice. Doc. #10. Six days later, Ronaldo renewed its motion for a temporary restraining order. Doc. # 11. The Court set a telephonic status conference for February 9, 2017.[1] Doc. #16.

---

[1] The Court initially set the conference for January 31, 2017, but rescheduled it for February 2 at Ronaldo's request to

Before the scheduled conference, on February 7, 2017, the Coxes filed identical motions to dismiss the verified complaint for failure to state a claim or, alternatively, lack of venue and personal jurisdiction. Doc. #25; Doc. #27.[2] The motions were supported by a separately-filed memorandum. Doc. #26. That same day, the Coxes also filed a three-page response to Ronaldo's renewed motion. Doc. #28.

Following the status conference on February 9, the Court set a schedule for discovery and briefing on the preliminary issues of personal jurisdiction and venue. Doc. #31. On February 22, 2017, after being advised that the defendants conceded the propriety of personal jurisdiction and venue, the Court issued an order setting a briefing schedule for the renewed motion for a temporary restraining order, which the parties agreed should be converted to a motion for preliminary injunction. Doc. #41. The order also set a briefing schedule for the Coxes to refile their motions to dismiss "to indicate their concessions on the record ...." The Coxes refiled an amended motion to dismiss and accompanying memorandum the next day. Doc. #48; Doc. #49. Also that day, the Court noticed for April 12, 2017, an evidentiary hearing on the motion for preliminary injunction. Doc. #47.

### B. First Amended Complaint and Related Filings

On March 3, 2017, Ronaldo filed an unopposed motion to amend its complaint. Doc. #51. Three days later, the Coxes filed an unopposed motion for leave to amend their motion to dismiss. Doc. #53. On March 7, 2017, United States Magistrate Judge David A. Sanders granted Ronaldo's motion to amend. Doc. #54. A "Notice of Withdrawal of Pending Motion to Dismiss

---

allow for the participation of its lead counsel, who was then out of the country and not yet admitted to practice in this district. The Court rescheduled the conference again for February 9 at the defendants' request to accommodate their out-of-state counsel, who had been recently retained and was in the process of being admitted pro hac vice.

[2] The Coxes initially filed motions to dismiss on February 6, 2017, and February 7, 2017. Doc. #17; Doc. #22. They refiled the motions on February 7 as directed by the Clerk of the Court to comply with the filing requirements in this district regarding signatures and exhibit descriptions. The initial motions to dismiss were subsequently denied as moot.

filed by Defendants James B. Cox and Catherine A. Cox" was filed the same day, in which the Coxes withdrew all prior motions to dismiss as well as the motion for leave to amend their motion to dismiss. Doc. #57.

Ronaldo filed the amended complaint on March 9, 2017. Doc. #58. The Coxes moved to dismiss the amended complaint on March 23, 2017. Doc. #60. Ronaldo responded to the motion to dismiss on April 6, 2017. Doc. #62.

### C. Evidentiary Hearing, Second Amended Complaint, and Related Filings

On April 6, 2017, six days before the scheduled preliminary injunction hearing, Ronaldo filed (1) a motion for leave to file a second amended complaint, Doc. #63; and (2) a motion to continue the preliminary injunction hearing until an unknown date, Doc. #64. The Coxes filed a response on April 10, 2017, opposing continuance. Doc. #66. After convening a status conference on the issue of continuance, the Court denied Ronaldo's motion to continue. Doc. #70.

The evidentiary hearing on the motion for preliminary injunction commenced April 12–13, 2017, and was continued until May 1, 2017.[3] On April 24, 2017, Ronaldo filed a notice withdrawing its April 6 motion for leave to file a second amended complaint. Doc. #74. The same day, Ronaldo filed a new unopposed motion for leave to file a second amended complaint to revise the proposed second amended complaint initially submitted. Doc. #75. The proposed amended complaint withdrew Ronaldo's claims for copyright infringement with regard to "The Love Knot" bracelet and the "Name This Bracelet" (now known as "The Hero Bracelet") and added a copyright infringement claim based on Ronaldo's "The Power of Prayer Bracelet." *Id.* On April 27, 2017, the Court issued an order granting Ronaldo's second motion for leave to file a

---

[3] The hearing was continued on April 13 because one of Ronaldo's witnesses became unavailable during the proceeding. Ronaldo ultimately decided against calling an additional witness. When the hearing reconvened on May 1, 2017, Ronaldo rested its case and the Court heard only the parties' closing remarks.

second amended complaint, and denying as moot all of the Coxes' prior motions to dismiss as well as Ronaldo's April 6 motion for leave. Doc. #81.

On April 28, 2017, Ronaldo filed its second amended complaint, Doc. #82; along with a "Notice of Withdrawal of Certain Claims for Pending Preliminary Injunction," Doc. #83. The notice states:

> Ronaldo's claims for trade dress infringement and unfair competition, under both the Lanham Act and common law, remain pending in this matter and are applicable to all infringing works using Ronaldo's "Kissing Roof" clasp trade dress, including but not limited to those works which use the trade dress -- even though claims for copyright infringement with respect thereto are now withdrawn. Ronaldo's claims for copyright infringement with regard to its "The Angelina Bracelet" and "The Power of Prayer Bracelet" Works also remain pending. Ronaldo's copyright infringement claim with regard to "The Power of Prayer Bracelet" Work is not currently subject to the preliminary injunction hearing.

*Id*.

The preliminary injunction hearing resumed and concluded on May 1, 2017, with oral arguments on the motion.

On May 12, 2017, the Coxes filed an answer and a counterclaim. Doc. #87. On June 16, 2017, Ronaldo filed a motion to dismiss the Coxes' counterclaim. Doc. #92. The Coxes responded to Ronaldo's motion to dismiss on June 29, 2017, Doc. #95; and Ronaldo replied on July 6, 2017, Doc. #96.[4]

## II
## Evidentiary Matters

At the conclusion of the evidentiary hearing, the Court took under advisement objections to the admission of two exhibits: P-20 and P-23. In resolving these objections, the Court notes that "[t]he law is well-settled that because the procedures governing a preliminary injunction are

---

[4] On July 20, 2017, Ronaldo filed on the docket as a motion a proposed "Agreed Protective Order." Doc. #97. The document will be stricken by separate order as contrary to the Court's local rules. *See* L.U. Civ. R. 7(b)(2)(F) ("A proposed order must be submitted to the judge for any motion that may be heard *ex parte* or is to be granted by consent.").

generally less formal than those at trial, the court may rely upon otherwise inadmissible evidence when considering a preliminary injunction." *ADT, LLC v. Capital Connect, Inc*., 145 F.Supp.3d 671, 682 (N.D. Tex. 2015) (citations omitted).

## A. P-20

At the evidentiary hearing, the Coxes objected to the admission of P-20 on the grounds of lack of authentication and foundation. A foundation objection generally refers to a proponent's ability to satisfy specific requirements for an exhibit's admission into evidence, such as authentication, best evidence, or an exception to the hearsay rule. 1 McCORMICK ON EVIDENCE § 51 (7th ed.); *see, e.g.*, *United States v. Barnes*, 803 F.3d 209, 217 (5th Cir. 2015) (foundation requirement for Facebook and text messages satisfied by authentication). Of relevance here, Rule 901(a) of the Federal Rules of Evidence provides that "[t]o satisfy the requirement of authenticating ... an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims …." Fed. R. Evid. 901(a).

P-20 is purportedly a page of photographs from a book authored by Linda Chandler. While there is no express testimony linking P-20 to the book, Dale Armstrong, a witness called by the Coxes, testified that she recognized Chandler's book and then testified from the book while the exhibit was placed on the ELMO system in the courtroom. Although this is not ideal authentication testimony, the Court deems it sufficient under the informal rules of admission for preliminary injunction hearings. Accordingly, the objection to P-20 is overruled and P-20 is admitted.

## B. P-23

The Coxes also objected to P-23, a "new releases page" from a recent Ronaldo catalog showing a Ronaldo Forget Me Not bracelet. The Coxes objected on the grounds that P-23, which was introduced during the redirect examination of Ronaldo employee Laura Lynette Johnson

Wimberly, was a "brand new exhibit and document" and was "beyond the scope of cross." Later, counsel for the Coxes offered the following less-than-clear soliloquy on the admissibility of the exhibit:

> Object to P 23 as unnecessarily confusing, beyond the course of cross-examination and presents an image not crossed on. I mean, it is – there is no foundation – I don't know how to make the objection, Your Honor. I apologize. Other than this isn't the same bracelet [the witness] was asked to look at and simply given another opportunity to do another version of it.

The scope of redirect, including the introduction of exhibits, is "committed to the district court judge's discretion." *United States v. Rodriguez*, 866 F.2d 390, 394 (11th Cir. 1989). Where an exhibit falls within the proper scope of redirect, admission is proper. *Id.* Generally, the scope of redirect cannot exceed the scope of cross examination. *United States v. Reed*, 277 F. App'x 357, 362 (5th Cir. 2008).

During cross examination, Wimberly was questioned about the clasp on a Forget Me Not bracelet. The questioning involved the use of a photograph which Wimberly found "really difficult to see." On redirect, Ronaldo introduced P-23 to "show a better picture that shows the clasp." Insofar as questioning on cross examination related to the clasp on the Forget Me Not bracelet, introduction of P-23 for the purpose of showing the clasp was within the scope of cross and was, therefore, properly introduced on redirect. As to the Coxes remaining objections, the Court notes that Wimberly identified P-23 as coming from the catalog so as to lay a proper foundation, that the picture is in no way confusing, and that the Coxes offered no authority (such as a governing pretrial order) which would prevent introduction of a new exhibit. Accordingly, the Coxes' objections to P-23 are overruled and P-23 is admitted.

## III
## Factual Background

### A. Ronnie Needham and Ronaldo Jewelry

In 1991, Ronnie Needham, who would later use the name "Ronaldo," ran a watch company

out of the Mall of Saint Matthews in Louisville, Kentucky. In mid-1992, Needham opened a watch kiosk next to a wire jewelry kiosk run by Jeffrey D. Carden, Jr. At that time, Needham learned to make wire names and a tapered clasp.[5] That year, Needham opened his own wire jewelry kiosk. By the end of 1992, Needham ran "[p]robably 8 to 10" booths. From that starting point, Needham began making bracelets and "rapidly moved into trade shows and wholesale sales."

At approximately the end of 1992, Needham began utilizing a "kissing clasp," also called a "step down clasp" or "kissing roof clasp," in his bracelets. The clasp, illustrated in Figure 1, has been described by Needham as having a "distinctive, signature shape of a house, having at least six equal horizontal wraps and then wraps that taper to a point, like the roof of a house, to meet the hook and eye sides of the closure." P-24 at ¶ 4. Michael Scheser, Ronaldo's Executive Vice President and its corporate representative at the hearing, testified that now approximately 80 to 85% of Ronaldo bracelets utilize a step down clasp.

**Figure 1**



Today, Ronaldo employs roughly sixty individuals and maintains a network of approximately 600 retail stores which carry Ronaldo jewelry. Scheser estimated there are between three and four thousand sales representatives "that know the Ronaldo product." Through this sales network, which encompasses thirty states[6] and online retail sales, Ronaldo made

---

[5] How Needham learned to make a tapered clasp is the subject of a factual dispute which need not be resolved in this order.

[6] P-26 at ¶ 2.

between eight and nine million dollars of revenue in 2016. Of this amount, between $2.2 to 2.5 million came from the State of Mississippi.

## B. The Coxes and JC Designs

James Cox entered the handmade wire jewelry business in August of 2000. Approximately a month or two after starting his business, James,[7] who sells his jewelry under the name JC Designs, began using a "tapered clasp" on his bracelets. James and his wife Catherine have attended tradeshows with their JC Designs jewelry since at least October 2014, when they first noticed similarities between James' work and Ronaldo's.

## C. Events Leading to This Lawsuit

In July 2016, both Ronaldo Jewelry and JC Designs attended a tradeshow at America's Mart in Atlanta, Georgia. Scheser "investigated" JC Designs at the show but "did not see anything that [he] would consider an infringement." However, "[s]oon after" the trade show, Scheser received reports from retail outlets that JC Designs was "claiming that they could make anything Ronaldo makes." Scheser investigated JC Designs' website and noticed "changes to their website, pictures of [the step down] clasp" as well as designs he felt infringed on Ronaldo's trade dress. Specifically, Scheser observed bracelets which he felt infringed on Ronaldo's Power of Prayer Bracelet, Hero Bracelet, and Angelina Bracelet.

When Scheser became aware of the alleged infringements, he directed Kevin Ryan, Ronaldo's in-house counsel, to contact the Coxes. According to Scheser, the telephone call amounted to a "door ... slammed in our face." After this phone call, Scheser directed Ryan to send the Coxes a cease-and-desist letter. Sometime after sending the letter, Ryan received a telephone call from the Coxes that "basically slammed the door in our face again." At this point, Scheser asked Ryan to "draft the lawsuit but don't file it and let them see the lawsuit that we were

---

[7] To avoid confusion, the Coxes' first names will be used.

being serious ....”

In January 2017, Ronaldo, having received no satisfactory response from the Coxes,[8] learned that the Coxes would be attending a trade show in Atlanta. Based on this information, Ronaldo filed this action, including the initial motion for temporary restraining order.

**IV**
**Analysis**

A preliminary injunction is an "extraordinary remedy." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 536 (5th Cir. 2013). A plaintiff seeking a preliminary injunction must clearly show:

> (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest.

*Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 457 (5th Cir. 2017). "Failure to sufficiently establish any one of the four factors requires [the court] to deny the movant's request for a preliminary injunction." *City of Dallas v. Delta Airlines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017).

In their skeletal response to Ronaldo's renewed motion, the Coxes argue that "[t]he TRO Motion does not include any injury which cannot be addressed by money damages, and Defendants have reasonable defenses that support the Court finding that Plaintiff does not have a reasonable likelihood of success on the merits of its case." Doc. #28 at 1.

**A. Irreparable Harm**

"Federal courts have long recognized that, when the threatened harm is more than de minimus, it is not so much the magnitude, but the *irreparability* that counts for purposes of a preliminary injunction." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th

---

[8] It is unclear if the proposed lawsuit was sent to the Coxes.

Cir. 2012) (internal quotation marks omitted) (citations omitted). "[A]n injury is irreparable only if it cannot be undone through monetary remedies." *Id*. (internal quotation marks and citations omitted).

During their closing remarks at the hearing, the Coxes argued that Ronaldo's "delay in seeking injunctive relief precludes [a] finding of irreparable harm" because such delay amounts to laches and demonstrates "that there is no apparent urgency to the requested injunctive relief." Specifically, the Coxes argued that "Ronaldo was at least aware of Mr. Cox and his business since the fall of 2014 ... [b]ut ... did not ... seek injunctive relief until January 2017" and that "if you factor in the plaintiff's recent activities ... such as dropping causes of actions, a last minute attempt to delay the hearing to add a new cause of action for something it should have originally pled, these actions weigh against granting [an injunction]."

Also at the hearing, Ronaldo responded that there was no delay because it "tried to deal with Mr. Cox through telephone calls and letters [and w]hen that was unsuccessful, a lawsuit was expeditiously filed." In the memorandum accompanying its motion, Ronaldo also contends that "[c]ommon sense dictates that Ronaldo will suffer irreparable business injury if its customers are confused into buying JC's inferior products believing they are real Ronaldo Collection designs." Doc. #12 at 9–10 & n.18. On this point, Ronaldo argued at hearing that "Ronaldo has achieved a position in the market based on its intellectual property rights and in particular the overall look of its bracelets ... and dilution of that is a very grave risk to Ronaldo."[9] In essence, Ronaldo asks this Court to presume irreparable harm based on the likelihood of confusion.

### 1. Presumption of irreparable harm in copyright cases

As an initial matter, while some district courts in this circuit have applied a presumption of

---

[9] During closing arguments, Ronaldo's counsel referenced non-existent evidence of actual confusion—specifically, that certain customers had attempted to return to Ronaldo the defendants' bracelets. This statement is unsupported by the record.

irreparable harm in copyright cases,[10] the Fifth Circuit has expressly rejected a presumption of irreparable harm in a copyright case. *Plains Cotton Co-op Ass'n of Lubbock, Tex. v. Goodpasture Comp. Serv., Inc.*, 807 F.2d 1256, 1261 (5th Cir. 1987). Consistent with this holding, numerous circuits have refused to apply such a presumption in copyright cases. *See Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x 981, 985 n.2 (11th Cir. 2016) (noting four circuits "have held or indicated that no presumption of irreparable harm applies in cases of copyright infringement") (collecting cases). In light of *Plains Cotton* and the weight of authority in other circuits, this Court declines to apply a presumption of irreparable harm to Ronaldo's copyright claims. *See Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, No. 3:16-cv-1651, 2016 WL 4944370, at * 12–13 (N.D. Tex. Sep. 16, 2016) ("Consistent with *Plains Cotton* and this court's prior opinions, the court rejects Plaintiff's argument that irreparable harm is presumed upon a showing of a reasonable likelihood of success on the merits of its copyright infringement claim.").

## 2. Presumption of irreparable harm in trademark cases

In *Paulsson Geophysical Services, Inc.*, the Fifth Circuit explicitly declined to "decide whether a court may presume irreparable injury upon finding a likelihood of confusion in a trademark case." 529 F.3d 303, 312–13 (5th Cir. 2008). The *Paulsson* court noted that the United States Supreme Court's 2006 decision in *eBay, Inc. v. MercExchange, L.L.C.*,[11] which held that a court should not apply a presumption of irreparable harm in patent cases, rendered the applicability of a presumption in trademark questions a "difficult question." *Paulsson*, 529 F.3d at 313. However, in *Abraham v. Alpha Chi Omega*, the Fifth Circuit seemed to endorse the presumption in a Lanham Act case when it noted that "a leading treatise states, '[a]ll that must be proven to establish liability and the need for an injunction against infringement is the likelihood of

---

[10] *See, e.g., Fringe Ins. Benefits, Inc. v. Beneco, Inc.*, No. 13-cv-034, 2015 WL 631181, at *9 (W.D. Tex. Feb. 11, 2015) ("[I]rreparable harm is presumed when a copyright is infringed.") (collecting cases).

[11] 547 U.S. 388, 391 (2006).

confusion – injury is presumed.'" 708 F.3d 614, 627 (5th Cir. 2013) (quoting 5 MᴄCᴀʀᴛʜʏ ᴏɴ Tʀᴀᴅᴇᴍᴀʀᴋꜱ ᴀɴᴅ Uɴꜰᴀɪʀ Cᴏᴍᴘᴇᴛɪᴛɪᴏɴ § 30:2 (4th ed. 2001)).

In the wake of *Abraham*, some lower courts in the Fifth Circuit have held that a showing of trademark infringement, without more, raises a presumption of irreparable harm. *Reservoir, Inc. v. Truesdell*, 1 F.Supp.3d 598, 616 (S.D. Tex. 2014) ("The Court notes that Plaintiffs have proven a likelihood of confusion[,] ... which courts have found sufficient to show irreparable injury.") (citing *Abraham* and *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 948 F.Supp.2d 691, 714 (S.D. Tex. 2013)). Other courts in the Fifth Circuit have declined to apply such a presumption. *Fed. Exp. Corp. v. Robrad, L.L.C.*, No. 3:14-cv-2152, 2014 WL 3880806, at *3 (N.D. Tex. Aug. 7, 2014) ("FedEx has failed to carry its burden of persuasion with respect to the second element-irreparable harm, and, in the context of a claim for trademark infringement under the Lanham Act, such injury simply cannot be presumed."); *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F.Supp.2d 888, 928 (S.D. Tex. 2014) ("The court is *not* ruling that finding a likelihood of confusion automatically results in finding irreparable injury and issuing an injunction unless the defendant shows that the case is exceptional."). Recently, the Fifth Circuit, without acknowledging *Abraham*, declined to consider the validity of the presumption. *Emerald City Mgmt., L.L.C. v. Kahn*, 624 F. App'x 223, 224 (5th Cir. 2015) ("We need not consider the validity of that presumption, however, because the record before us supports a finding of a substantial threat of irreparable harm").

### a. Impact of Abraham

In analyzing the propriety of a presumption of harm in Lanham Act cases, the Court begins by observing that *Abraham* does not require adoption of such a presumption. *Abraham* involved application of the "degree of prejudice" test to a laches defense to a requested injunction under which "courts ... focus on the degree of prejudice the defendant would suffer in the event the

infringing use is enjoined." 708 F.3d at 626. The Fifth Circuit in *Abraham*, after noting the "well-established" four requirements for a preliminary injunction, held that "[t]he district court's test did not erroneously place the burden on Abraham; rather it correctly considered the relevant factors." *Id*. at 627. Following this statement, the Fifth Circuit wrote:

> As to the first factor, a leading treatise states, "All that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed." 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 30:2 (4th ed. 2001). As to the second, the same treatise states, "[T]here seems little doubt that money damages are 'inadequate' to compensate [owner] for continuing acts of [infringer]." *Id*. The district court properly considered the final two factors, explaining that:
>
> > In order to determine whether the injunction should issue, the Court balances the equities, weighing the degree of prejudice Abraham would suffer if either use was permanently enjoined against the Greeks' right to exclusive use of the marks and the public interest in avoiding consumer confusion caused by their continued use.
>
> Therefore, the district court did not abuse its discretion by relying on … the "degree of prejudice" test in fashioning injunctive relief.

*Id*. (alterations in original).

In context, the statement regarding irreparable harm was not phrased as an adopted proposition of law but rather appears to be merely a recitation of the McCarthy view on the subject. *See generally Alaska Pulp Corp., Inc. v. United States*, 48 Fed. Cl. 655, 671 (2001) ("[T]he quoted language is not even that of the Court of Appeals. It is simply the Court's recitation of Professor's Corbin's view ...."). Indeed, unlike its analysis of the balancing of hardships and the public interest (the former of which is implicated by the degree of prejudice test), which actually applied the stated rules to the facts, the *Abraham* court did not purport to adopt or apply the McCarthy irreparable harm rule or the presumption underlying it. Accordingly, because the statement was neither necessary to the opinion nor an explication of the governing rule of law, it may be properly

characterized as dicta.[12]  *In re Hearn*, 376 F.3d 447, 453–54, 462 nn.12 & 13 (5th Cir. 2004)

(defining dicta); *see* Mark A. Lemley, *Did eBay Irreparably Injure Trademark Law?*, 92 Notre

Dame L. Rev. 1795, 1805 n.60 (2017) ("[B]ecause [*Abraham*] involved laches, not an affirmative

case for injunction relief, the statement was dictum.").  Furthermore, given *Abraham*'s lack of

analysis on the issue of presumption, as well as the Fifth Circuit's previous preservation of the

issue for decision, the Court deems such dicta to be of little persuasive weight.[13]  *See generally*

*Becker v. Thompson*, 463 F.2d 1338, 1338 (5th Cir. 1972) ("To suggest that the Supreme Court in

collateral dicta ... has decided [an issue] is inconceivable when the issue was so carefully preserved

in [previous opinions] ....") (internal citations omitted).

Even if the Fifth Circuit did rely on the McCarthy view in reaching its conclusion, the

validity of the presumption was not before the Fifth Circuit nor did the Fifth Circuit reject the

applicability of a test that would place the burden on the party seeking the injunction to prove

irreparable harm.  The Fifth Circuit merely found the burden was not placed on Abraham, the

party opposing the claim of infringement.  "When an issue is not argued or is ignored in a

decision, such decision is not precedent to be followed in a subsequent case in which the issue

arises."  *Thomas v. Texas Dep't of Criminal Justice*, 297 F.3d 361, 370 n.11 (5th Cir. 2002)

(citing *Nat'l Cable Television Ass'n, Inc. v. Am. Cinema Editors*, 937 F.2d 1572, 1581 (Fed. Cir.

1991); *UMC Elecs. Co. v. United States*, 816 F.2d 647, 654 (Fed. Cir. 1987) (premise assumed in

earlier cases rejected when issue squarely presented), *cert. denied*, 484 U.S. 1025 (1988); *Webster*

*v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to

the attention of the court nor ruled upon, are not to be considered as having been so decided as to

---

[12] This conclusion is buttressed by the fact that after *Abraham*, the Fifth Circuit in *Emerald City* declined to decide whether "the district court improperly presumed a threat of irreparable harm solely from a likelihood of confusion ...." 624 F. App'x at 224.

[13] *Abraham's* lack of analysis on the presumption issue also suggests that the statement was not intended to create a new rule.  *See generally United States v. Jim*, 786 F.3d 802, 811 (10th Cir. 2015) (announcement of rule likely would not be done "in a single sentence found toward the end of [an] opinion").

constitute precedents").

### b. Applicable law

Having determined that *Abraham* is not controlling on the presumption issue, the Court turns to the ultimate question: whether a presumption of irreparable harm arises from a showing of likelihood of confusion. Answering this question must necessarily begin with an analysis of the Supreme Court's ruling in *eBay*, the decision which caused the Fifth Circuit to refer to the presumption issue as a "difficult question." *Paulsson*, 529 F.3d at 313.

In *eBay*, the Supreme Court considered a motion for permanent injunction in a patent infringement action. 547 U.S. at 390. At the trial level, the district court denied injunctive relief on the grounds that a "plaintiff's willingness to license its patents" and "its lack of commercial activity in practicing the patents" "would be sufficient to establish that the patent holder would not suffer irreparable harm if an injunction did not issue." *Id.* at 393. The Federal Circuit reversed the district court by applying a "general rule ... that a permanent injunction will issue once infringement and validity [of the patent] have been adjudged." *Id.* at 393–94. The Supreme Court reversed, holding that both courts erred by applying "categorical rule[s]" to evaluate the requested injunctive relief. *Id.*

Two years after *eBay*, the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.* considered, in an environmental case, the standard for showing irreparable harm in the context of a preliminary injunction. 555 U.S. 7, 12 (2008). In *Winter*, both lower courts "held that when a plaintiff demonstrates a strong likelihood of prevailing on the merits, a preliminary injunction may be entered based only on a 'possibility' of irreparable harm." *Id.* at 21. The *Winter* court rejected this approach as inconsistent with the "frequently reiterated standard requir[ing] plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22.

Following these decisions, the propriety of a preliminary injunction in a trade dress infringement action depends on the resolution of three questions. First, whether the holding in *eBay* applies to preliminary injunctions. Second, whether the holding in *eBay* applies to trade dress actions. Third, whether the holdings in *eBay* and *Winter* prohibit a presumption of irreparable harm in such actions.

As to the first question, it is beyond dispute that "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. Of Gambell*, 480 U.S. 531, 546 n.12 (1987). Accordingly, the *eBay* standard applies to motions for preliminary injunctions.

Regarding the second question, every circuit which has addressed the issue has held that *eBay*'s prohibition of categorical rules applies to trademark actions. *See Swarovski Aktiengesellschaft v. Building No. 19, Inc.*, 704 F.3d 44, 53–54 (1st Cir. 2013);[14] *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 213–24 (3d Cir. 2014); *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006); *Herb Reed Enters., LLC v. Fl. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250–51 (9th Cir. 2013); *Commodores Entm't Corp. v. McClary*, 648 F. App'x 771, 777 (11th Cir. 2016). The Second Circuit has not expressly reached the issue but has observed that "nothing in the text or the logic of *eBay* suggests that its rule is limited to patent cases." *Salinger v. Colting*, 607 F.3d 68, 77–78 (2d Cir. 2010); *see id.* (*eBay*'s categorical rule prohibition precludes irreparable harm presumption in copyright actions).

In applying *eBay*'s holding to a trademark case, the Third Circuit held:

> The rationale of the *eBay* decision was not that patent cases are somehow unique, but rather, ... that "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must

---

[14] In this case, the First Circuit held that the categorical rules prohibition applies in trademark actions but declined to decide whether such precludes a presumption of irreparable harm.

> be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *eBay*, 547 U.S. at 394. In addition, ... the Court in *eBay* suggested that a "major departure from the long tradition of equity practice" should be permitted only to the extent that "Congress intended such a departure." 547 U.S. at 391–92. It follows that a court is not free to depart from traditional principles of equity merely because it believes such a departure would further a statute's policy goals, such as, in the case of Lanham Act claims, compensating plaintiffs for harms that may be difficult to quantify. Rather, the text of the Lanham Act clearly evinces congressional intent to require courts to grant or deny injunctions according to traditional principles of equity. *See* 15 U.S.C. § 1116(a).

*Ferring*, 765 F.3d at 215–16 (citations omitted). The Court finds this reasoning persuasive and holds that the general categorical prohibition announced in *eBay* applies to trade dress actions.

On the final question, as observed by the Supreme Court in *eBay*, "well-established principles of equity" require that a plaintiff satisfy the traditional four-part test. 547 U.S. at 391. Rules which circumvent this rule are improper. *Id.* In *Ferring*, the Third Circuit held that "[b]ecause a presumption of irreparable harm deviates from the traditional principles of equity ... which require[s] a movant to demonstrate irreparable harm, ... there is no presumption of irreparable harm afforded to parties seeking injunctive relief in Lanham Act case." *Ferring*, 765 F.3d at 216. The Ninth and Eleventh Circuits have reached similar conclusions. *Herb Reed*, 736 F.3d at 1249–50 (no presumption in Lanham Act case); *Commodores*, 648 F. App'x at 777 ("In light of the Supreme Court's holding in *eBay*, a presumption of irreparable harm cannot survive.").

While the Fifth Circuit has not expressly addressed *eBay*, it has held in the copyright context that a presumption of irreparable harm runs contrary to the requirement that a plaintiff satisfy all four elements of the injunction test. *Plains Cotton*, 807 F.2d at 1261 (declining to apply presumption of irreparable harm in copyright case because "we have made it clear … that preliminary injunctions will be denied based on a failure to prove separately each of the four elements of the four prong test for obtaining the injunction"). Accordingly, the Court concludes that a presumption of irreparable harm in a Lanham Act case is contrary to *eBay* and is, therefore,

improper.

### 3. Delay

Even if Ronaldo could raise a presumption of irreparable harm, a presumption of irreparable harm may be rebutted by a plaintiff's undue delay in seeking injunctive relief which demonstrates "that there is no apparent urgency to the request for injunctive relief."[15] *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F.Supp.2d 603, 609 (N.D. Tex. 2006) (citation omitted); *Daily Instruments Corp. v. Heidt*, 998 F.Supp.2d 553, 570 (S.D. Tex. 2014) ("Evidence of an undue delay in bringing suit may be sufficient to rebut the presumption of irreparable harm."). This rule applies to requests for injunctive relief based on both alleged copyright and trade dress infringement. *AMID, Inc. v. Medic Alert Found. U.S., Inc.*, __ F.Supp.3d __, No. H-16-1137, 2017 WL 1021685, at * 24–26 (S.D. Tex. Mar. 16, 2017) (finding delay precluded injunctive relief on both copyright and trade dress claims).

This Court has not found a Fifth Circuit case addressing the length of delay necessary to preclude preliminary injunctive relief in Lanham Act or copyright cases. However, the Fifth Circuit, in a labor dispute case, has held in the context of a temporary restraining order that a three-month delay "is not determinative of whether relief should be granted, [but] is some evidence" of lack of harm. *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975). District courts in this circuit have generally declined to grant injunctive relief where a plaintiff, without sufficient explanation, delayed for five months or more in seeking injunctive relief. *See H.D. Vest, Inc. v. H.D. Vest Mgmt. & Servs., LLC*, No. 3:09-cv-390, 2009 WL 1766095, at *4 (N.D. Tex. June 23, 2009) (unexplained five-month delay sufficient to rebut

---

[15] A delay may also bar injunctive relief in a trademark action "if the trademark owner conducted itself in a way that induced the infringer's reliance or if an injunction would result in 'substantial prejudice' to the infringer." *Abraham*, 708 F.3d at 626. Additionally, "[i]n extraordinary circumstances ... the consequences of a delay in commencing suit may be of sufficient magnitude to warrant, at the very outset of the litigation, curtailment of the relief equitably awardable." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962, 1977 (2014). Although the Coxes asserted laches at the hearing, they offered no argument as to how Ronaldo's delay would justify application of the doctrine. Under these circumstances, they may not rely on a laches defense.

presumption); *Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*, No. 4:15-cv-571, 2015 WL 9876952, at *8 (E.D. Tex. Dec. 23, 2015) (unexplained five-month delay not dispositive but "support[ed] a lack of urgency and irreparable harm"); *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, No. 3:16-cv-1651, 2016 WL 4944370, at *16 (Sep. 16, 2016) ("Plaintiff's unexplained and undue delay of approximately six months strongly undercuts its claim of irreparable harm and contention regarding the need for urgent relief."); *Gonannies, Inc.*, 464 F.Supp.2d at 609 (approximate six-month "undue" delay sufficient to rebut presumption of harm); *Talon Transaction Techs., Inc. v. StoneEagle Servs., Inc.*, No. 3:13-cv-902, 2013 WL 12173219, at *3 (N.D. Tex. July 24, 2013) (nine-month delay "doom[ed]"application for preliminary relief); *Ellipse Commc'ns, Inc. v. Caven*, No. 3-07-cv-1922, 2009 WL 497268, at *2 (N.D. Tex. Feb. 26, 2009) (unexplained seven-month delay showed "no substantial threat of irreparable harm if an injunction is not granted").

Here, the record shows that Ronaldo learned of the allegedly infringing products no later than "shortly" after a July 2016 trade show in Atlanta. After making three efforts to communicate with the defendants, Ronaldo filed this action on January 3, 2017 – approximately six months later. Once this action was filed, Ronaldo sought a continuance of the evidentiary hearing to add additional claims.

At the evidentiary hearing, Ronaldo attributed its original six-month delay to its efforts to resolve this action without litigation. However, courts in this circuit have declined to find efforts to avoid litigation sufficient reason to excuse a delay of the length here. *See, e.g., Gonannies, Inc.*, 464 F.Supp.2d at 609 (delay not excused when complaint filed "only after settlement negotiations had soured"). This is so because "[i]f the alleged harms ... are indeed as detrimental as Defendants assert, [they] would have sought injunctive relief as soon as practicable ...." *Pruvit Ventures, Inc.*, 2015 WL 9876952, at *8; *see Humana Ins. Co. v. Tenet Health Sys.*, No.

3:16-cv-2919, 2016 WL 6893629, at *38 (N.D. Tex. Nov. 21, 2016) (quoting *Pruvit*). The Court agrees that a party suffering irreparable harm would and should seek injunctive relief rather than, or in addition to, engaging in negotiations. This is particularly true here where the defendants strongly signaled from the outset that any discussions would be fruitless. Accordingly, the Court finds that Ronaldo's efforts to avoid litigation do not sufficiently explain the initial six-month delay. The Court further finds that this six-month delay, coupled with Ronaldo's efforts to indefinitely continue the injunction hearing, serves to rebut any presumption of irreparable harm raised by the alleged infringement.

### 4. Summary

Ronaldo declined to present any actual evidence of irreparable harm to support a preliminary injunction under its trademark and copyright claims.[16] Rather, Ronaldo relied on a presumption of irreparable harm based on alleged likelihood of confusion. For the reasons above, the Court concludes that a presumption of irreparable harm is inappropriate under both trademark and copyright law. Even if such a presumption were applicable, Ronaldo's delay in pursuing this action would preclude injunctive relief. Therefore, Ronaldo cannot show irreparable harm and its motion for a preliminary injunction must fail.

### B. Remaining Factors

Where, as here, a plaintiff has failed to show irreparable harm, a motion for preliminary injunction is properly denied without consideration of the other factors. *See Polymer Techs., Inc., v. Bridewell*, 103 F.3d 970, 973–74 (Fed. Cir. 1996) ("[A] trial court need not make findings concerning the third and fourth factors if the moving party fails to establish either of the first two factors."); *Pruvit*, 2015 WL 9876952, at *9 ("Because Defendants have failed to carry their burden

---

[16] Ronaldo's brief seems to argue harm may be presumed from a combination of confusion and inferior quality. Such a presumption would seem to be inappropriate for the reasons set forth above. Regardless, Ronaldo offered no evidence as to the respective qualities of the bracelets. To the contrary, James testified that he believed his bracelets were of better quality. Accordingly, even if such a presumption were proper under *eBay* and *Winter*, it would be inappropriate under the facts here.

of showing irreparable harm in the absence of a preliminary injunction, the Court need not address the remaining preliminary injunction factors."); *Jaramillo v. Bexar Cty.*, No. 09-cv-656, 2010 WL 1190931, at *1 (W.D. Tex. Mar. 25, 2010) ("Because Jaramillo has not established that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief, the district court need not consider whether Jaramillo can establish he is likely to succeed on the merits, the balance of equities tips in Jaramillo's favor, or an injunction is in the public interest.").

## V
## Conclusion

For the reasons above, Ronaldo's motion for preliminary injunctive relief [11] is **DENIED**.

**SO ORDERED**, this 5th day of September, 2017.

/s/**Debra M. Brown**_____
**UNITED STATES DISTRICT JUDGE**