# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

**RONALDO DESIGNER JEWELRY, INC.**                                               **PLAINTIFF**

**V.**                                                                 **NO. 1:17-CV-2-DMB-DAS**

**JAMES B. COX and CATHERINE A. COX**
**d/b/a JC DESIGNS d/b/a WIRE N RINGS**
**and JOHN DOE a/k/a LEROY and JOHN**
**DOES Numbers 1 through 99**                                                 **DEFENDANTS**

## ORDER

Before the Court is Ronaldo Designer Jewelry Inc.'s second motion to dismiss. Doc. #104.

## I
## Relevant Procedural History[1]

On April 28, 2017, Ronaldo Designer Jewelry, Inc., with leave of the Court, filed a second amended complaint against James and Catherine Cox "d/b/a JC Designs d/b/a Wire N Rings." Doc. #82. The three-count complaint seeks injunctive and monetary relief for the Coxes' production of jewelry, which allegedly infringes on Ronaldo's intellectual property.

On May 12, 2017, the Coxes answered the second amended complaint. Doc. #87. The Coxes' answer asserted fifteen counterclaims. *Id.* at 13–48. On June 16, 2017, after receiving a requested extension to respond to the counterclaims, Ronaldo filed a motion to dismiss five of the counterclaims. Doc. #92.

On March 16, 2018, this Court granted Ronaldo's motion and dismissed the challenged counterclaims but with leave for the Coxes to re-file them within twenty-one days. Doc. #101 at 4. The Coxes filed an answer with their first amended counterclaims on April 6, 2018. Doc.

---

[1] A more detailed procedural history may be found in this Court's September 5, 2017, order. *See* Doc. #98.

#102. The Coxes assert, among other things, a counterclaim for tortious interference with actual business relations (Count X) and a counterclaim for tortious interference with prospective business relations (Count XI). *Id*. at 45–47.

On April 26, 2018, Ronaldo filed a motion to dismiss Count X and Count XI, Doc. #104, and a motion to strike two affidavits attached to the Coxes' amended counterclaims, Doc. #105. Both motions are fully briefed.

## II
## Motion to Strike

The Coxes attached two affidavits to their answer and amended counterclaims: (1) an affidavit of Judy Irvine, "a sales representative in the jewelry industry," which expresses the opinion that "Ronaldo company's actions would interfere with [JC Designs] obtaining additional business from new vendors due to the cloud of confusion and disruption Ronaldo has created," Doc. #102-2; and (2) an affidavit of Jennie Bruning, the "Vendor Coordinator for Monograms America," in which Bruning expresses "concern[] that … non-Ronaldo vendors [at a 2016 vendor forum] were improperly dissuaded and/or intimidated from reordering from JC Designs in an anticompetitive manner by either Ronaldo company itself or through its agents, representatives, and/or distributors," Doc. #102-3. The affidavits are "incorporated by reference" in the counterclaims and are cited as support for certain factual assertions. *See* Doc. #102 at 28–29. Ronaldo argues that the affidavits should be stricken because "affidavits are not to be part of a complaint and violate of [sic] Rule 10(c)."[2] Doc. #107 at 2.

Federal Rule of Civil Procedure 10(c) provides, in relevant part, that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Courts are divided on the issue of whether an affidavit qualifies as a "written instrument" under Rule 10(c).

---

[2] Ronaldo also argues that "Defendants do not appear to consider the Affidavits as part of their Amended Counterclaim. Defendants did not incorporate the Affidavits by reference." Doc.# 107 at 2. This is simply untrue.

2

The Second and Third Circuits have held that an affidavit does not qualify as a written instrument because "[t]he case law demonstrates … that the types of exhibits incorporated within the pleadings by Rule 10(c) consist largely of documentary evidence, specifically, contracts, notes, and other writings on which a party's action or defense is based …." *See Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989) (internal quotation marks and alterations omitted); *Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015) (adopting reasoning of *Bartle*). The Seventh Circuit, noting that a "broader interpretation comports with the traditionally generous nature in which we view pleadings," has reached the opposite conclusion. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 453 & n.4 (7th Cir. 1998). The Eighth Circuit, in an unpublished opinion with no analysis on the issue, has held that an affidavit falls under the ambit of Rule 10(c). *Rasidescu v. Globe Coll., Inc.*, 105 F. App'x 121, 123 (8th Cir. 2004).

The Fifth Circuit, for its part, has not definitively addressed the scope of Rule 10(c). It has, however, held that a district court did not abuse its discretion in refusing to consider opinions or conclusions (as distinct from facts) set forth in an affidavit attached to a complaint. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). In so holding, the Fifth Circuit cited with approval a district court case which adopted the Third Circuit's holding that an affidavit is not a written instrument. *Id.* at 285–86 (citing *DeMarco v. DepoTech Corp.*, 149 F.Supp.2d 1212, 1221 (S.D. Cal. 2001)). In *Blackwell*, the Fifth Circuit did not reach the larger issue of whether an affidavit itself may be considered a written instrument under Rule 10(c) but noted that "[e]ven if *non-opinion* portions of an expert's affidavit constitute an instrument pursuant to Rule 10, opinions cannot substitute for facts …." *Id.* at 286. In an unpublished decision issued two years later, however, the Fifth Circuit held that an affidavit attached to a complaint and specifically incorporated in an allegation was "properly consider[ed] in ruling on [a] motion to dismiss for failure to state a claim." *Malik v. Cont'l Airlines Inc.*, 305 F. App'x 165, 166 n.2 (5th

3

Cir. 2008).

The distinction between affidavits setting forth facts and affidavits setting forth opinions finds some support in the history of Rule 10(c). The advisory committee's note to the 1937 enactment of Rule 10(c) states that "[f]or written instruments as exhibits, see Smith-Hurd Ill.Stats. ch. 110, § 160." At the time of enactment, this statute provided:

> Whenever an action, defense or counterclaim is founded upon a written instrument, a copy thereof, or of so much of the same as is relevant, must be attached to the pleading as an exhibit or recited therein, unless the pleader shall attach to his pleading an affidavit stating facts showing that such instrument is not accessible to him. In pleading any written instrument a copy thereof may be attached to the pleading as an exhibit. In either case the exhibit shall constitute a part of the pleading for all purposes. No profert shall be necessary.

Smith-Hurd Ill.Stats. ch. 110, § 160. Although often applied to documentary evidence, such as insurance policies, *MacKnight v. Fed. Life Ins. Co.*, 278 Ill. App. 241, 244 (Ill Ct. App. 1934); the statute, shortly after Rule 10(c)'s enactment, was applied to the contents of affidavits attached to a complaint, *Pure Oil Co. v. Miller-McFarland Drilling Co.*, 34 N.E.2d 854, 859–60 (Ill. 1941).[3]

Consistent with the post-enactment treatment of § 160 (the basis for Rule 10(c)'s written instrument provision), the Fifth Circuit has expressed a general willingness to consider an attached affidavit as a part of a pleading. *Malik*, 305 F. App'x at 166 n.2. But, as mentioned above, it has held that opinions in an affidavit are not entitled to this treatment. *Blackwell*, 440 F.3d at 286. Under these circumstances, the Court concludes that Rule 10(c)'s definition of a written instrument encompasses an affidavit setting forth facts but not opinions. Accordingly, the motion to strike will be granted to the extent it seeks exclusion of opinions in the affidavits, and will be denied to the extent it seeks exclusion of facts in the affidavits.

---

[3] While *Pure Oil Co.*'s post-enactment decision is certainly not dispositive as to the Advisory Committee's intent, it is persuasive to the extent it is a relatively contemporaneous interpretation of the statute forming the basis of Rule 10(c).

**III**
**Motion to Dismiss**

**A. Standard**

Federal Rule of Civil Procedure 8 "requires a pleading to contain a short and plain statement of the claim showing that the pleader is entitled to relief. The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (internal quotation marks and alteration omitted). "Although Rule 8 and—in specific circumstances—Rule 9 provide the statutory component of the federal pleading standard, Rule 12(b)(6) provides the one and only method for testing whether that standard has been met." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 203 (5th Cir. 2016).

"To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement for relief—including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017). Under this standard, a court must "accept all well-pleaded facts as true." *New Orleans City v. Ambac Assurance Corp.*, 815 F.3d 196, 199 (5th Cir. 2016) (internal quotation marks omitted).

**B. Factual Allegations of Counterclaims**

Since August of 2000, James Cox has worked in the wire jewelry business, creating, making, and selling handcrafted wire bracelets. Doc. #102 at ¶ 101. At some point, James[4] began marketing his bracelets under the name "JC Designs Wire N Rings." *Id.* at ¶ 106.

Ronaldo Designer Jewelry, Inc. is a Kentucky corporation which sells jewelry, including wire bracelets. *See id.* at ¶¶ 95, 115–16. According to the Coxes, Ronaldo has sought to divert

---
[4] To avoid confusion, the Court will refer to the Coxes by their first names.

customers away from JC Designs by (1) communicating "false and defamatory statements in the marketplace about Mr. and Mrs. Cox, their business, and/or their products, including, but not limited to, phrases such as 'knock-off products' and 'inferior quality products,'" and (2) "intimidat[ing] multiple actual and prospective clients [by] suggesting that unless the customers purchased directly from a Ronaldo Company affiliate, they would be subject to litigation." *Id*. at ¶ 157.

In the fall of 2016, the Coxes attended a Vendor Forum at which "many new vendors expressed interest in [the Coxes'] bracelets, and placed various orders …." *Id*. at ¶ 160. At this forum, in which Ronaldo did not participate,[5] "some of the non-Ronaldo vendors appear[ed] intimidated and concerned that they would be improperly targeted by Ronaldo Company for buying and selling any wire craft jewelry …." *Id*. None of these new vendors reordered products from the Coxes. *Id*. at ¶ 247.

### C. Analysis

Ronaldo seeks dismissal of the Coxes' counterclaim for tortious interference with actual business relations and their counterclaim for tortious interference with prospective business relations. Doc. #106 at 1.

> The four elements of tortious interference with business relations … are (1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted.

*AmSouth Bank v. Gupta*, 838 So.2d 205, 214 (Miss. 2002). The cause of action does not encompass all potential business relationships but only those relationships "marked by a reasonable likelihood that the relationship will come into existence." *Ward v. Life Inv'rs Ins. Co.*

---

[5] Doc. #102-3 at ¶ 4.

*of Am.*, 383 F.Supp.2d 882, 888 (S.D. Miss. 2005) (internal quotation marks omitted).

Ronaldo argues the Coxes' tortious interference counterclaims must fail for numerous reasons, most notably that the Coxes "fail to identify any specific individual or entity that was discouraged and/or intimidated or what activity discouraged any such person." Doc. #106 at 7 (internal quotation marks omitted).

Although the Coxes' allegations are less than clear,[6] it appears they base their tortious interference counterclaims on two types of acts: (1) the allegedly false statements "in the marketplace" that their products are "knock-off products" and "inferior quality products;" and (2) "suggesting" to "multiple actual and prospective clients … that unless the customers purchased directly from a Ronaldo Company affiliate, they would be subject to litigation." Doc. #102 at ¶ 157. The Coxes allege that this conduct interfered generally with their customer base, "including but not limited to" the unnamed new clients from the 2016 vendor forum. *Id*. at ¶ 247.

While the pleading standards are not onerous, federal "courts have dismissed claims for tortious interference where the claimant fails to identify any customers or potential customers that it lost because of its adversary's alleged wrongful conduct." *Metromedia Energy, Inc. v. Griffin*, No. 10-1692, 2011 WL 4343801, at *3 (D.N.J. Sep. 13, 2011); *Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, 332 F. App'x 787, 790 (3d Cir. 2009) (affirming dismissal where complaint failed "to identify a single, specific customer that [plaintiff] either lost or could have acquired but for [the wrongful] conduct"); *Nirvana, Inc. v. Nestle Waters N. Am. Inc.*, 123 F.Supp.3d 357, 380 (N.D.N.Y. 2015) ("[T]he failure to identify the specific potential customers or the third-party businesses in the pleading is fatal to a plaintiff's claim."); *Econ. Research Servs.*,

---

[6] In its reply, Ronaldo argues for the first time that "the Amended Counterclaim is a 'shotgun pleading' and fails to comply with federal pleading standards, making it subject to dismissal under Rule 12(b)(6)." Doc. #113 at 5. To the extent this argument was not advanced in Ronaldo's motion or initial memorandum, it has not been considered for the purpose of resolving this motion. *See Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016) ("[R]eply briefs cannot be used to raise new arguments.").

7

*Inc. v. Resolution Econ., LLC*, 208 F.Supp.3d 219, 229 (D.D.C. 2016) ("As to ERS's relationships with its clients or customers, the Complaint fails to identify the specific business relationships with which defendants are alleged to have interfered or to substantiate ERS's claim of an expectancy that those relationships would continue, and it therefore fails to plead the existence of valid business relationships with the requisite specificity.").

Here, the Coxes have wholly failed to identify a specific relationship (prospective or actual) which was allegedly harmed by Ronaldo's alleged conduct. While the Coxes make general allegations about interference with certain new clients obtained during the Vendor Forum, they have made no effort to identify such persons. Indeed, it is unclear whether the Coxes are alleging that *every* new client obtained at the forum who subsequently declined to renew was tortiously interfered with, or whether only *some* of the client non-renewals may be attributable to Ronaldo. This lack of specificity is fatal to the claims for tortious interference. *See Zhejiang Med. Co., Ltd. v. Kaneka Corp.*, No. 11-1052, 2012 WL 12893418, at *4 (S.D. Tex. Aug. 13, 2012) ("ZMC alleges that, as a result of the 156 letters that Kaneka sent to ZMC's existing and potential customers, 'some' of ZMC's existing and potential customers have refused to purchase ZMC's products and/or threatened to cease purchasing ZMC's products. This allegation does not identify clients with which ZMC would have done business but for Kaneka's conduct.") (citation omitted).[7] Accordingly, Ronaldo's motion to dismiss the tortious interference counterclaims will be granted.

## IV
## Conclusion

Ronaldo's motion to strike [105] is **GRANTED in Part and DENIED in Part** as specified above. Ronaldo's motion to dismiss [104] is **GRANTED**. Count X and Count XI of the Coxes'

---

[7] *But see Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, __ F.3d __, No. 15-14160, 2019 WL 1006973, at *17 (11th Cir. Mar. 4, 2019) ("We cannot conclude that the Body Shops' failure to identify particular potential customers who were steered away constitutes a failure to give each defendant fair notice of the claim against it. It is not the potential customer who is the target of the alleged tortious interference; it is the targeted Body Shop.").

8

counterclaims are **DISMISSED**.

      **SO ORDERED**, this 18th day of March, 2019.

                                                **/s/Debra M. Brown**
                                                **UNITED STATES DISTRICT JUDGE**