**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**RONALDO DESIGNER JEWELRY, INC.**                                 **PLAINTIFF**

**V.**                                      **NO. 1:17-CV-2-DMB-DAS**

**JAMES B. COX and CATHERINE A. COX**
**d/b/a JC DESIGNS d/b/a WIRE N RINGS**
**and JOHN DOE a/k/a LEROY and JOHN**
**DOES Numbers 1 through 99**                                                     **DEFENDANTS**

**ORDER**

This intellectual property action is before the Court on "Defendants James B. Cox and Catherine A. Cox's Motion for Issuance of Request to Register of Copyrights pursuant to 17 U.S.C. § 411(b)(2)." Doc. #143.

**I**
**Procedural History**

On March 9, 2017, Ronaldo Designer Jewelry, Inc. filed an amended complaint against James B. Cox and Catherine A. Cox d/b/a JC Designs d/b/a Wire N Rings, John Doe a/k/a Leroy, and John Does Numbers 1 through 99, alleging, among other things, a claim for copyright infringement. Doc. #58. Ronaldo's copyright claims are premised on copyright registrations for three wire bracelets—The Love Knot, The Angelina Bracelet, and Name This Bracelet (now known as The Hero Bracelet). *Id*. at ¶¶ 19–26.

On September 2, 2018, the Coxes, alleging that "the information … Ronaldo provided in its copyright applications … for the Power of Prayer jewelry design and the Angelina jewelry design … was materially inaccurate and incomplete," moved this Court pursuant to 17 U.S.C. § 411(b)(2) to issue a request to the Register of Copyrights to determine whether the Register would have refused Ronaldo's registrations in light of the alleged inaccurate or missing information. Doc. #143. Ronaldo responded in opposition to the motion on September 17, 2018. Doc. #155.

The Coxes filed a reply on September 25, 2018, one day after the reply deadline. Doc. #169; *see* L.U. Civ. R. 7(b)(4) ("Counsel for movant desiring to file a rebuttal may do so within seven days after the service of the respondent's response and memorandum brief.").

# II
# Standard

Requests to the Register of Copyrights are authorized by 17 U.S.C. § 411(b), which provides:

> (1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless--
>   (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
>   (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.
>
> (2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

### A. The *Schaltenbrand* Approach

While the Fifth Circuit appears to have not yet considered the proper framework for evaluating a motion for a request under 17 U.S.C. § 411(b), the Seventh Circuit has held:

> Given its obvious potential for abuse, we must strongly caution both courts and litigants to be wary of using this device in the future. Although the statute appears to mandate that the Register get involved "[i]n any case in which inaccurate information [in an application for copyright registration] is alleged," input need not be sought immediately after a party makes such a claim. Instead, courts can demand that the party seeking invalidation first establish that the other preconditions to invalidity are satisfied before obtaining the Register's advice on materiality. In other words, a litigant should demonstrate that (1) the registration application included inaccurate information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office. Once these requirements are met, a court may question the Register as to whether the inaccuracy would have resulted in the application's refusal.

*DeliverMedHoldings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013) (citations omitted). The Seventh Circuit found that "[a]side from minimizing the risk that parties would use this

provision as a delay tactic, this approach has the added benefit of an endorsement from the Register," who in response to an earlier request, had written "[b]efore asking the Register whether she would have refused to register a copyright … a court should feel free to determine whether there is in fact a misstatement of fact …." *Id*.

In the years since *Schaltenbrand* was decided, numerous courts have utilized the Seventh Circuit's two-pronged approach. *See, e.g.*, *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 349 (S.D.N.Y. 2016); *Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, LP*, No. 14-1903, 2017 WL 3206896, at *3 (S.D. Tex. July 26, 2017); *Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc.*, No. 16-84, 2017 WL 2404918, at *4 (C.D. Cal. Mar. 6, 2017). While this Court shares the Seventh Circuit's concern that litigants may attempt to abuse § 411(b)(2), *Schaltenbrand*'s approach cannot be squared with the plain language of the statute.

It is axiomatic that in any case of statutory interpretation, a court must "look to the plain language of the statute, reading it as a whole and mindful of the linguistic choices made by Congress." *BMC Software, Inc. v. C.I.R.*, 780 F.3d 669, 674 (5th Cir. 2015). Under this review, "[i]f the language of the statute is plain and unambiguous, it must be given effect." *Id*. (quotation marks omitted).

Section 411(b)(2) unambiguously provides that a referral to the Register is *required* "[i]n any case in which inaccurate information described under paragraph (1) is *alleged*." 17 U.S.C. § 411(b)(2) (using word "shall") (emphasis added). The plain meaning of "alleged," of course, contemplates no evidentiary burden. *See* BLACK'S LAW DICTIONARY (10th ed. 2014), alleged (defining "alleged" as "Asserted to be true as described").[1] Indeed, the United States Supreme Court has expressly rejected imposing an evidentiary burden when a statute, like § 411(b)(2), uses

---

[1] *See also* MERRIAM-WEBSTER (Online ed.), https://www.merriamwebster.com/dictionary/alleged (defining "alleged" as "accused but not proven or convicted").

the phrase "is alleged."

In *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, the Supreme Court considered the showing necessary to invoke jurisdiction under the Clean Air Act's jurisdictional statute. 484 U.S. 49, 64 (1987). The relevant statute provided for jurisdiction over an action against any person "who is alleged to be in violation" of the Clean Air Act's requirements, 33 U.S.C. § 1365(a), and the defendant argued "that citizen-plaintiffs must prove their allegations of ongoing noncompliance before jurisdiction attaches," *Chesapeake Bay*, 484 U.S. at 64. The Supreme Court disagreed, holding:

> The statute does not require that a defendant "be in violation" of the Act at the commencement of suit; rather, the statute requires that a defendant be "alleged to be in violation." Petitioner's construction of the Act reads the word "alleged" out of § 505. As petitioner itself is quick to note in other contexts, there is no reason to believe that Congress' drafting of § 505 was sloppy or haphazard. We agree with the Solicitor General that "Congress's use of the phrase 'alleged to be in violation' reflects a conscious sensitivity to the practical difficulties of detecting and proving chronic episodic violations of environmental standards." Our acknowledgment that Congress intended a good-faith allegation to suffice for jurisdictional purposes, however, does not give litigants license to flood the courts with suits premised on baseless allegations. Rule 11 of the Federal Rules of Civil Procedure, which requires pleadings to be based on a good-faith belief, formed after reasonable inquiry, that they are "well grounded in fact," adequately protects defendants from frivolous allegations.

*Id*. at 64–65 (citations omitted).

This Court, like the United States Supreme Court, concludes that Congress' use of the word "alleged" reflects an intent to eschew an evidentiary requirement. Accordingly, to the extent *Schaltenbrand* requires that a party "establish" or "demonstrate" the requirements of the statute to trigger a referral, such an approach, which effectively replaces the word "alleged" with the word "proved," must be rejected as contrary to the plain meaning of the statute.[2]

---

[2] Additionally, if Congress intended to add an evidentiary burden to the allegation requirement, it knew how to do so. *See* 17 U.S.C. § 1203(b)(2) ("[A]t any time while an action is pending, [the court] may order the impounding … of any device or product that is in custody or control of the alleged violator *and that the court has reasonable cause to believe was involved in a violation*.") (emphasis added).

4

In reaching this conclusion, the Court acknowledges that the Register, in a response to § 411(b)(2) request on a prior occasion, stated that "before asking the Register whether she would have refused to register a copyright if she had known about a particular alleged misstatement of fact on an application, a court should feel free to determine whether there is in fact a misstatement of fact." *Olem Shoe Corp. v. Washington Shoe Co.*, 1:09-cv-23494, at Doc. #209 (S.D. Fla. Oct. 14, 2010) ("Response"). When an agency speaks on a statute it is charged with administering, a court must engage in the two-step analysis set forth in *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Acosta v. Hensel Phelps Const. Co.*, 909 F.3d 723, 730 (5th Cir. 2018). Under this approach:

> At the first step, applying the ordinary tools of statutory construction, the court must determine whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. But if the statute is silent or ambiguous with respect to the specific issue, the question for the court at the second step is whether the agency's answer is based on a permissible construction of the statute. If both criteria are met, that is, if a statute is ambiguous, and if the implementing agency's construction is reasonable, then *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation.

*Id.* (quotation marks, footnotes, alterations, and citations omitted).

Here, the Court concludes that by using the word "alleged" (rather than "proved" or a similar variant), Congress has directly spoken on the precise question of whether a factual showing is required to refer a question to the Register. Accordingly, the Register's proffered interpretation, which allows (but does not require)[3] a court to make a factual demand of a movant, must be rejected in favor of the statute's plain meaning.

---

[3] Although the Response suggested that a court could demand an incorrect statement actually be proven, it did not require that a court apply such a burden. Rather, it also suggested a "motion for partial summary judgment" practice to allow a court to determine if "there is no factual basis for certain allegations, such as an allegation that the plaintiff is not the author or copyright owner of the work in question …." Response at 11.

5

Regardless, when a statutory provision "is clear on its face, there is no need to look to" an agency's interpretation of the statute.[4]  *Freeman v. Quicken Loans, Inc.*, 626 F.3d 799, 805 (5th Cir. 2010).  To the extent the Register has suggested that a request for referral may be rejected for lack of evidentiary support, such interpretation must be rejected.

### B. This Court's Approach

Having rejected *Schaltenbrand* in favor of the statute's unambiguous requirement of allegations, the question becomes what allegations will trigger § 411(b)(2)'s mandatory referral requirement.  As quoted above, § 411(b)(2) provides for a referral "[i]n any case in which inaccurate information described under paragraph (1) is alleged."  Paragraph (1), in turn, refers to information included in a copyright application that is (1) inaccurate; (2) provided with knowledge of its inaccuracy; and (3) would have resulted in a refusal of the copyright application.  Accordingly, referral is required when a movant, in compliance with Rule 11, sets forth good-faith allegations that specific information included in a copyright application satisfies these three requirements.[5]  In considering whether this showing has been made, the Court is mindful of the Register's admonishment that "if [an] issue depends even in part on interpretation or understanding of the Copyright Office's registration practices … the practice anticipated in § 411(b) … would be to refer the question to the Register."  Response at 12 n.5.

---

[4] The Response also states that the Register's interpretation of the statute is appropriate because "the Office played an instrumental role in the amendment of 17 U.S.C. § 411(b)(2) …."  Response at 10.  However, "[p]ost-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation."  *Brueswitz v. Wyeth LLC*, 562 U.S. 223, 241 (2011).  To the extent the Response was intended to represent the legislative intent, it is of no value.

[5] While this framework is much more lenient than the Seventh Circuit's approach, the Court believes that the normal safeguards against litigation misconduct—most notably Rule 11 of the Federal Rules of Civil Procedure and a district court's inherent authority to sanction bad faith conduct—are sufficient to deter abuse of § 411(b)(2).  Such sanctions would likely include attorney's fees for defending the motion and subsequent referral and, in egregious cases, may result in dispositive relief.

# III
# Analysis

The Coxes' motion alleges that Ronaldo's copyright applications for the Power of Prayer and Angelina designs contained inaccurate information because (1) the applications did not disclose that the designs "contain common, unoriginal elements generally used in the jewelry industry;" and (2) the applications listed Ronaldo as the owner of the designs, when he was not. *See generally* Doc. #144. Ronaldo, in its response, relies primarily on evidentiary objections to the Coxes' motion. *See generally* Doc. #155.

Rather than address these contentions at this time, the Court, in light of its adoption of a new standard, believes it is appropriate to give Ronaldo a supplemental opportunity to respond to the Coxes' motion. Accordingly, Ronaldo is **DIRECTED** to file a supplemental response to the Coxes' motion within seven (7) days of the entry of this order. The Coxes may file a supplemental reply within seven (7) days of the filing of Ronaldo's supplemental response.

**SO ORDERED**, this 24th day of April, 2019.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**