**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**RONALDO DESIGNER JEWELRY, INC.**                                                            **PLAINTIFF**

**V.**                                                                                                                                **NO. 1:17-CV-2-DMB-DAS**

**JAMES B. COX and CATHERINE A. COX
d/b/a JC DESIGNS d/b/a WIRE N RINGS
and JOHN DOE a/k/a LEROY and JOHN
DOES Numbers 1 through 99**                                              **DEFENDANTS**

**ORDER**

This intellectual property case is before the Court on James B. Cox and Catherine A. Cox's "Motion to Exclude Testimony of Experts," Doc. #250, and "Motion to Strike Testimony of Experts," Doc. #291.

**I
Procedural History**

On April 28, 2017, Ronaldo Designer Jewelry, Inc., filed a second amended complaint in this case against James B. Cox and Catherine A. Cox d/b/a JC Designs d/b/a Wire N Rings, John Doe a/k/a Leroy, and John Does Numbers 1 through 99, alleging claims for copyright infringement (Count One), trade dress infringement and unfair competition under the Lanham Act (Count Two), and unfair trade practices and unfair competition under Mississippi law (Count Three). Doc. #82. On May 12, 2017, the Coxes answered the complaint. Doc. #87. The Coxes' answer includes counterclaims for trademark infringement (Counterclaim One), false designation (Counterclaim Two), various forms of declaratory relief (Counterclaims Three through Eight), unfair competition under the Lanham Act (Counterclaim Nine), unjust enrichment under Mississippi common law (Counterclaim Ten), unfair competition under Mississippi common law (Counterclaim Eleven), tortious interference with actual business relations (Counterclaim Twelve), tortious interference with prospective business relations (Counterclaim Thirteen), deceptive trade and business

practices under Mississippi common law (Counterclaim Fourteen), and "defamation/slander" (Counterclaim Fifteen). *Id.* at 27–48.

On January 30, 2019, following a period of discovery, the Coxes filed a motion to exclude the testimony and opinions[1] of certain experts designated by Ronaldo. Doc. #250. About three months later, the Coxes filed a motion to strike the opinions of five of the experts subject to the motion to exclude, to the extent they were offered as summary judgment exhibits. Doc. #291. Both motions are fully briefed. Docs. #276, #288, #305, #306.

## II
## Standard of Review

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

A "district court has wide latitude when navigating the expert-qualification process." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 625 (5th Cir. 2018). "As long as there are sufficient indicia that an individual will provide a reliable opinion on a subject, a district court may qualify that individual as an expert." *Id.* (quotation marks omitted).

"[E]xpert testimony must be relevant, not simply in the sense that all testimony must be relevant, … but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 429 (5th Cir. 2015) (quoting *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d

---

[1] While the motion's title refers only to testimony, Doc. #250, the accompanying memorandum refers to "conclusions," *see, e.g., id.* at 3.

2

581, 584 (5th Cir. 2003)).

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), a district court has a "special obligation … to ensure that any and all scientific testimony is not only relevant, but reliable." *Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 802 (5th Cir. 2018) (internal alterations and quotation marks omitted). "To establish reliability under *Daubert*, an expert bears the burden of furnishing some objective, independent validation of his methodology." *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (internal alterations and quotation marks omitted).

When considering reliability, *Daubert* provides that trial courts should consider (1) "the extent to which a given technique can be tested;" (2) "whether the technique is subject to peer review and publication;" (3) "any known potential rate of error, the existence and maintenance of standards governing operation of the technique;" and (4) "whether the method has been generally accepted in the relevant scientific community." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). The *Daubert* factors "are not mandatory or exclusive." *Id*. Rather, the district court should consider whether the enumerated factors "are appropriate, use them as a starting point, and then ascertain if other factors should be considered." *Id*. (citing *Black v. Food Lion, Inc.*, 171 F.3d 308, 311–12 (5th Cir. 1999)).

In addition to the specific factors enumerated in *Daubert*, the Advisory Committee's Note to the 2000 Amendment to Rule 702 states that the following five "factors remain relevant to the determination of the reliability of expert testimony:"

> (1) Whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.
> (2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion.
> (3) Whether the expert has adequately accounted for obvious alternative explanations.
> (4) Whether the expert is being as careful as he would be in his regular professional

3

> work outside his paid litigation consulting.
> (5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

Fed. R. Evid. 702 advisory committee's note to 2000 amendment (quotation marks and citations omitted).

Overall, the Court must be mindful that "the fact that … testimony may be assailable does not mean it is inadmissible under Rule 702. The trial court's role as gatekeeper … is not intended to serve as a replacement for the adversary system." *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012).

## III
## Analysis

The Coxes' *Daubert* motion seeks exclusion of the testimony and opinions of Krista Holt, Robert Ford, Preston Reuther, Lee Ann McGhee, John Allen Cravens, Brian Ball, and Susan Durham. *See* Doc. #250. The Coxes' motion to strike asks that the same testimony and opinions of Reuther, McGhee, Cravens, Ball, and Durham be stricken from the summary judgment briefing. *See* Doc. #291. Because the motions make near-identical arguments for their requested relief, the Court will consider the motions together.[2]

### A.  Krista Holt

Krista Holt's expert report purports to "provide opinions regarding the monetary damages that may be due to Ronaldo … if there is a finding of liability against [the Coxes]." Doc. #250-1 at PageID #4134. The Coxes seek to exclude as unreliable Holt's opinions regarding damages. The Coxes further argue that Holt is unqualified to opine on topics related to jewelry design.

### 1. Damages opinions

In her report, Holt lists various potential remedies for the alleged wrongs but states that

---

[2] "[A] district court is not always required to hold a formal *Daubert* hearing." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 201 (5th Cir. 2016). Because no party has requested a hearing, and because a hearing would not aid in the disposition of these motions, the Court declines to hold a hearing.

4

"[t]he most appropriate monetary remedy … would be the disgorgement of the Defendants' profits." Doc. #250-1 at PageID #4153. In reaching this conclusion, Holt notes that "alternative remedies that might be available to Ronaldo would potentially include actual damages such as lost profits or a reasonable royalty[ but] it would be difficult in this case to quantify those remedies with any precision due to the Defendants' absence of records." *Id*. at PageID #4154. She also notes that statutory damages may be available should Ronaldo prevail on its copyright claims. *Id*.

From there, Holt focuses on the disgorgement of profits remedy. She concludes that because "Ronaldo believes its distinctive jewelry designs began to generate secondary meaning in the marketplace by no later than 2012," damages for Ronaldo's Lanham Act claims "should consist of profits resulting from Defendants' infringing sales from 2012 until the Defendants cease the accused actions." *Id*. at PageID #4155. Holt further opines that damages for infringement of Ronaldo's copyrights for its Power of Prayer design should "consist of profits resulting from Defendants' allegedly infringing sales from either the effective date of the copyright or the date of the first infringing sale, whichever is later, until the date the Defendants cease the accused actions," and that damages for infringement of Ronaldo's copyright for The Angelina Bracelet "should consist of profits resulting from Defendants' allegedly infringing sales from April 30, 2013 until the Defendants cease the accused actions." *Id*. at PageID #4155–56. Ultimately, by reviewing financial documents, Holt determined that the Coxes had "potentially infringing revenues" of $56,826 in 2012; $73,053 in 2013; $133,623 in 2014; $174,253 in 2015; $259,824 in 2016; $291,591 in 2017; and $147,230 in 2018. *Id*. at PageID #4163.

The Coxes argue that Holt's opinions should be excluded because she (1) used unreliable methods to determine the type of damages; (2) applied a damages period outside the applicable limitations periods; and (3) failed to distinguish between alleged infringing products in calculating revenues. Doc. #251 at 4–6.

*a. Failure to distinguish between products*

The Coxes argue that because Ronaldo has asserted multiple claims based on different allegedly infringing products, Holt was required to "reduce[] the report down to the distinct claims," and her failure to do so "is fatal to the overall reliability of this report." *Id.* at 6. Ronaldo responds that the Coxes do not dispute that Holt provided a reliable opinion on their overall revenues and that, therefore, the "report cannot be deemed unreliable as to the calculation of revenues because overall revenues are all that is required in these circumstances." Doc. #276 at 6. Ronaldo is correct that the Coxes do not challenge the reliability of Holt's opinion insofar as it purports to reflect their gross revenue. The Coxes, in essence, argue that the gross revenue calculations are irrelevant because they would not allow recovery under applicable law.

17 U.S.C. § 504(b) allows a copyright holder to recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing … actual damages."

> Once liability has been shown, § 504(b) creates an initial presumption that the infringer's profits attributable to the infringement are equal to its gross revenue. In meeting its initial burden, however, a copyright holder must show more than the infringer's total gross revenue from all of its profit streams. Rather, gross revenue refers only to revenue reasonably related to the infringement.

*MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 367 (5th Cir. 2010) (cleaned up).

Similarly, a plaintiff prevailing in a trademark action may recover "those profits attributable to the unlawful use of its mark." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 350 (5th Cir. 2002). In that regard, "the plaintiff has the burden of showing the amount of the defendant's sales *of the infringing product*." *Maltina Corp. v. Cawy Bottling Co., Inc.*, 613 F.2d 582, 586 (5th Cir. 1980) (emphasis added).

Mississippi common law also permits a plaintiff asserting a claim of unfair competition to

6

recover profits made as a result of the wrongful activity. *See Git-R-Done Prods., Inc. v. Giterdone C Store, LLC*, 226 F. Supp. 3d 684, 692 (S.D. Miss. 2016) (citing *Richardson v. Thomas*, 257 So. 2d 877, 881 (Miss. 1972)). While this Court has not found Mississippi case law setting the standard for proving such damages, the Mississippi Supreme Court has cited with approval the statement that "the basis of the remedy" for federal trademark law and state common law is "substantially the same." *Cockrell v. Davis*, 23 So. 2d 256, 261 (Miss. 1945). Given this, and in the absence of any evidence to the contrary, the Court concludes that Mississippi would follow the federal standard for recovery of profits—that is, the plaintiff has the burden of showing the profits *from the wrongful activity*.

Thus, contrary to Ronaldo's argument, its initial burden is *not* established merely by showing the Coxes' gross revenues. Rather, a plaintiff like Ronaldo must show that the gross revenues were reasonably related to the alleged infringement (for the copyright claims) and were "attributable" to the wrongful actions (for the trademark and unfair competition claims). Holt's report makes no effort to satisfy either of these standards. In this sense, Holt's revenue calculations may best be described as conditionally relevant—that is, her calculations are relevant to the extent Ronaldo can connect her gross revenue calculations to the appropriate legal standards.

When confronted with a question of conditional relevancy, "[t]he court may admit the proposed evidence on the condition that the proof be introduced later." Fed. R. Evid. 104(b). In accordance with this rule, the Court declines to exclude Holt's revenue calculations at this time. The Court will deny the motions to the extent they are premised on the failure to distinguish between products on the condition that relevance be proven later.

### b. *Opinions on types of damages*

The Coxes argue that, contrary to Holt's contention, statutory damages are not authorized in this action and that Holt's statements regarding the inability to measure lost profits or royalties

7

render her ultimate opinion unreliable. Doc. #251 at 4. They also argue that Holt "is attempting to insert herself in place of the Court in opinion [sic] as to what the legal measure of damages might be, but then never applies the measures described." *Id.*

Because Holt did not purport to apply a statutory damages calculation, any error in her opinion regarding the availability of statutory damages would not impact her ultimate conclusion. Similarly, because she did not purport to apply a royalties or lost profits calculation, her statement regarding the ability to calculate those damages does not render her ultimate opinion unreliable. Nevertheless, it is axiomatic that an expert "may never render conclusions of law." *Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009). Consequently, an expert may not offer opinions regarding the availability of damages in a case. *See Hous. Works, Inc. v. Turner*, 362 F. Supp. 2d 434, 447–48 (S.D.N.Y. 2005) ("Dr. Abzug proposes to testify principally that the sum of the face value of the lost contracts is the proper measure of damages. But the proper measure of damages is a question of law for the Court."). Thus, to the extent Holt opines as to which damages are available or appropriate for which claims, her opinions must be excluded. *See U.S. Dist. Ct. S. Dist. of Tex. Hous. Div. v. Solvay S.A.*, No. H-6-2662, 2016 WL 1107014, at *4 (S.D. Tex. Mar. 22, 2016) ("[T]he court will determine the appropriate method for calculating damages prior to trial and will limit expert testimony to the appropriate legal framework at that time."); *Learning Care Grp., Inc. v. Armetta*, No. 3:13-cv-1540, 2016 WL 3248178, at *7 (D. Conn. June 12, 2016) ("[O]pinions on legal theories of recovery and which damages theories match up with which causes of action are inappropriate subjects for expert testimony, because they are legal conclusions.").

However, while the measure of damages is a question of law, the calculation of damages is a question of fact. *Neal v. United States*, 562 F.2d 338, 341 (5th Cir. 1977). To the extent Holt's calculations are offered on an issue of fact (the Coxes' gross revenues), they are not

8

improper legal conclusions and the motion to exclude will be denied in that regard.

### c. Damages period

The Coxes argue that Holt's use of 2012 as the beginning of the relevant damages period is incorrect because the Copyright Act has a three-year statute of limitations. Doc. #251 at 5–6. Ronaldo responds that the applicable statute of limitations is subject to a discovery rule and that it "is permitted to use the year 2012 in its calculation of damages, particularly with regard to its claim for unfair trade practices." Doc. #276 at 5–6.

As explained above, Holt is not entitled to offer an opinion on the propriety of damages. Accordingly, her opinion on the proper damages period must be excluded as a legal conclusion. However, Ronaldo is correct that claims brought under the Copyright Act, which are subject to a three-year statute of limitations, are also subject to the discovery rule, as they accrue "once the plaintiff knows or has reason to know of the injury upon which the claim is based." *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 393 (5th Cir. 2014) (alterations and quotation marks omitted). Ronaldo's Lanham Act and state law claims are also subject to a three-year limitations period and the discovery rule. *See Anderson v. LaVere*, 136 So. 3d 404, 411 (Miss. 2014) (three-year limitations period applied to claim for "unfair competition and business practice" and began to run upon discovery of injury).[3] The applicable statutes of limitations will, therefore, depend on the facts of this case. In this regard, the gross revenues for a given fiscal year are best described as conditionally relevant, with relevance dependent on the date Ronaldo's claims accrued. The Court will, therefore, decline to exclude such opinions at this time.

---

[3] Because the Lanham Act does not include a statute of limitations, courts "look to the most appropriate or most analogous state statute of limitations." *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 790 (E.D. La. 2012). "In applying the state statute of limitations, courts typically apply the state's tolling provisions as well." *Id*. The most analogous cause of action to Ronaldo's Lanham Act claims for trade dress infringement and unfair competition is the common law tort of unfair competition. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 250–51 (5th Cir. 2010).

9

**2. Other statements**

As mentioned above, Holt's report includes factual statements related both to jewelry design generally and to the specific facts of this case. *See, e.g.*, Doc. #250-1 at PageID #4142 ("It is each jewelry artist's specific design choices that help separate their products stylistically from those of other artists."), #4145 ("[The Angelina] bracelet was inspired by Ronaldo's youngest daughter and was one of Ronaldo's first bracelets to incorporate a stamped silver bar into the bracelet."). The Coxes argue that these statements are not "proper" testimony and that even if they were, they are outside the scope of Holt's qualifications. Doc. #251 at 7–8. Ronaldo argues that the information is "background information that is necessary to make the expert report both readable and understandable" and that Holt was entitled to rely on such information pursuant to Federal Rule of Evidence 703. Doc. #276 at 7–8.

"[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 404 (S.D.N.Y. 2013). However, an expert report may "provide the foundation for [an] opinion," including factual assertions. *Id*. At trial, however, "the factual assertions … would have to be supported by admissible evidence" and the expert "could not present these facts to the jury for the purpose of describing what actually took place." *Id*. Here, it is apparent the challenged sections of Holt's opinion are presented as foundations for her opinion. To this extent, they will not be excluded. However, Holt may not present the facts at trial for the purpose of describing what took place.

**B. Robert Ford**

Robert Ford's expert report contains two opinions: (1) "James Cox, as a sole proprietor, did not have an online marketplace presence prior to 2009, and no online presence of significance until 2016;" and (2) "James Cox, as a sole proprietor, did not have a significant presence on any

10

social media platform prior [sic] 2016." Doc. #250-3 at PageID #4202–03. Ford reached these opinions by analyzing the online activity, specifically website updates and social media posts, of James Cox as an individual, of a company called Wired Up Jewelry, and of Wire n Rings. *Id*. While Ford did not expressly state his methodology, his process is clear from his report. Ford reviewed the website and social media activity of James Cox and his business and then characterized the level of activity.

The Coxes argue that the consideration of internet activity rather than public consumption was improper and that Ford failed to provide any methodology for determining the level of such activity. Doc. #251 at 9–10. Ronaldo responds that Ford "conclusively showed that the Coxes hardly used their websites and social media [and t]herefore, it becomes unnecessary to determine what type of 'significant' internet presence the Defendants had, because it is clear the Coxes did not have much at all." Doc. #276 at 16. Thus, the Coxes' challenge involves two separate considerations: (1) whether the consideration of web activity without consideration of public engagement is a reliable means for measuring internet presence; and (2) whether Ford's characterization of the Coxes' web presence is reliable. Because the answer to the second question is no, the Court need not consider the first.

Because an expert bears the burden of establishing reliability,[4] the expert must "explain the methodologies and principles that support his opinion; he cannot simply assert a bottom line." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) (quotation marks omitted). An expert, therefore, may not characterize a result without offering a bases for the characterization. *See Barr v. United States*, No. 3:15-cv-1329, 2018 WL 4815413, at *10 (S.D. Ill. Oct. 4, 2018) (opinion unreliable where expert "did not explain on his scale what the cutoff points are for 'low', 'moderate low', 'high low', 'low moderate', 'moderate', 'high moderate',

---

[4] *Ill. Cent. R.R. Co.*, 705 F.3d at 536.

11

'low high', 'high', and 'high high'").

Here, Ford characterized the Coxes' web activities as not "significant" but offered no explanation for what a significant web presence would be or why the Coxes' web activities did not meet this standard. This failure requires exclusion, on the ground of reliability, of his opinions.

Furthermore, even if Ford's methodology could be deemed reliable, Ronaldo's own arguments show that it would be inadmissible. As argued by Ronaldo, a review of the Coxes' web presence makes "clear that the Coxes did not have much at all." Doc. #276 at 16. If that is the case, Ford's opinion would not assist a trier of fact to determine the level of the Coxes' online activity and is, therefore, inadmissible. *See Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990) ("[T]he jury could adeptly assess this situation using only their common experience and knowledge. Expert testimony was unnecessary …."). For these reasons, Ford's opinions on the levels of the Coxes' online presence must be excluded.

### C. Preston Reuther

In his expert report, Preston Reuther, "a Master Wire Sculptor," opines that (1) "Ronaldo's decorative clasp design is associated with Ronaldo, or, at a minimum, with a single source;" (2) "Ronaldo's decorative clasp is neither functional nor utilitarian;" (3) "Ronaldo's 'Power of Prayer Bracelet' is creative and original, and non-functional;" and (4) "Ronaldo's 'Angelina Bracelet' is creative and original, and non-functional." Doc. #250-5 at PageID #4226, #4227–31. The Coxes argue that Reuther is unqualified to opine on the secondary meaning of Ronaldo's jewelry, that his methodology for assessing secondary meaning is unreliable, and that his report contains legal conclusions. Doc. #251 at 10–11.

#### 1. Qualifications

"Under Rule 702, a witness may be qualified as an expert based upon knowledge, skill, experience, training, or education." *United States v. Haines*, 803 F.3d 713, 727 (5th Cir. 2015)

12

(quotation marks omitted). The Fifth Circuit has "never required formal educational credentials to qualify a witness as an expert, and even the advisory committee notes to Rule 702 state that experience in the field can be the predominant, if not the sole, basis for expert testimony in some cases." *Id*. (quotation marks omitted).

There can be no serious dispute that Reuther, with his more than twenty-five years of experience in the fields of jewelry design and jewelry business, is qualified to opine on matters in this field. However, it does not necessarily follow that these qualifications render him qualified to opine on the existence of secondary meaning.

> Secondary meaning is used generally to indicate that a mark or dress has come through use to be uniquely associated with a specific source. To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.

*Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 247 (5th Cir. 2010). The existence of a secondary meaning is a question of fact. *Id*. at 234.

The Fifth Circuit has identified seven non-exhaustive factors for determining whether secondary meaning has been shown:

> "(1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress."

*Id*. at 248. In weighing these factors, "the focus is on how [the evidence] demonstrates that the meaning of the mark or trade dress has been altered in the minds of consumers." *Id*.

"Because the primary element of secondary meaning is a mental association in buyers' minds between the alleged mark and a single source of the product, the determination whether a mark or dress has acquired secondary meaning is primarily an empirical inquiry." *Id*. at 248 (alteration omitted). Accordingly, "[t]he expertise most germane to such a determination … involves training or experience performing empirical analyses." *LVL XIII Brands, Inc. v. Louis*

13

*Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 639 (S.D.N.Y. 2016). However, notwithstanding a background in empirical data, an expert may be qualified to testify on secondary meaning so long as the expert has "specialized knowledge, training, or experience in understanding how the public perceives [the product]." *R.F.M.A.S., Inc. v. Mimi So*, 748 F. Supp. 2d 244, 282 (S.D.N.Y. 2010); *see generally Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 327–28 (3d Cir. 2002) (expert with twenty years of experience in relevant field qualified to opine on the existence of likelihood of confusion where his "experience plainly related" to five of the nine relevant factors).

Based on his resume, Reuther has no training or experience in empirical inquiries. And, while Reuther is indisputably active in the wire jewelry business as a retailer, nothing in his retail experience (or any other professional experience) suggests that he possesses specialized knowledge, training, or experience in understanding how the public perceives wire jewelry. Because this Court declines to hold that every retailer is qualified to opine on the secondary meaning of the products he sells, the Court concludes that Reuther is unqualified to offer an opinion on the secondary meaning of Ronaldo's products. *See Sassafras Enters., Inc. v. Roshco, Inc.*, 915 F. Supp. 1, 7–8 (N.D. Ill. 1996) (sales representative unqualified to offer opinion on secondary meaning).

### 2. Reliability

Even if Reuther was qualified to opine on the issue, it is clear his methodology regarding secondary meaning is insufficient. In his report, Reuther states simply:

> Ronaldo has, at all times, since I first knew him and became aware of his jewelry creations, used consistently sized metal and stone materials and consistently spaced elements in specific combinations and incorporated the Ronaldo clasp into the majority of the Ronaldo jewelry designs.
>
> I have looked at a lot of wire bracelets during my career, and I have seen a few random instances of use of a clasp somewhat like the Ronaldo clasp, and none in collections where it has been used throughout the collections or as an identifying feature….

14

> Based on my knowledge and experience, in my opinion, Ronaldo's clasp - particularly, the step down to a point - functions like a trademark for the Ronaldo line, and has, through Ronaldo's over 25 years of use, become associated with Ronaldo jewelry, such that it has acquired source-identifying significance which the wire jewelry industry, and buyers and customers associate it with Ronaldo, or at a minimum, with a single source, even if they do not know the name of the source is Ronaldo.

Doc. #250-5 at PageID #4228.

In considering the reliability of this opinion, the Court notes that the *Daubert* factors "simply are not applicable to [testimony] whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000). Rather, the law recognizes "an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002). This does not mean, however, that an expert may bypass a reliability inquiry by simply referring to experience. To the contrary, "[i]f an opinion is based solely or primarily on experience, it 'must be grounded in an accepted body of learning or experience in the expert's field.'" *DHI Grp., Inc. v. Kent*, 397 F. Supp. 3d 904, 917 (S.D. Tex. 2019). In that regard, "[t]he witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts." *Id*.

Reuther apparently found secondary meaning based on his general experience and the fact that Ronaldo has consistently used similar elements, and his observation that he had only seen "a few random instances" of similar clasps. *See* Doc. #250-5 at Page ID #4228. Neither Reuther nor Ronaldo has presented any evidence or argument which would show this is an appropriate application of Reuther's experience to these facts. Reuther has not explained, for example, why his only seeing "a few random" uses of the clip means that the meaning of the mark or trade dress has been altered in the minds of consumers. *See id.* at Page ID #4228. In the absence of this or

15

similar evidence, the Court cannot accept Reuther's opinion regarding secondary meaning. *Compare De Boulle Diamond & Jewelry, Inc. v Boulle, Ltd.*, No. 3:12-cv-1462, 2015 WL 12698060, at *2 (N.D. Tex. Jan. 21, 2015) (excluding opinion on likelihood of confusion opinion premised on experience where the proponent presented no evidence that the "testimony is reliable or comprised of more than his own *ipse dixit* conclusions"), *with Heckler & Koch, Inc. v. German Sport Guns GmbH, Am. Tactical Imps., Inc.*, 71 F. Supp. 3d 866, 908 (S.D. Ind. 2014) (opinion on secondary meaning premised on experience reliable where expert conducted "extensive review of the features of the [product] in comparison to other [products] of similar type available on the market"). The opinion, therefore, will be excluded as unreliable.

### 3. Legal conclusions

The Coxes also object to certain unspecified "legal conclusion[s] of trade mark or trade dress." Doc. #251 at 10. Because it is unclear to which statements the Coxes refer, the motion will be denied without prejudice in this respect.

### D. Store Owners

Ronaldo designated as experts four jewelry store owners—Lee Ann McGhee, John Allen Cravens, Brian Ball, and Susan Durham—who each submitted an expert report opining that Ronaldo's clasp is non-functional and that "Ronaldo's look and decorative clasp design are associated with Ronaldo or, at a minimum with a single source." Docs. #250-6 at PageID #4243, #250-7 at PageID #4268, #250-8 at PageID #4278, #250-9 at PageID #4289. The Coxes seek exclusion because (1) the reports were "not prepared" by the retail experts but by counsel for Ronaldo; (2) the retail experts are biased; (3) the retail experts are unqualified to offer the opinions; and (4) the retail experts failed to explain "how they formed" the opinions. Doc. #251 at PageID #4309, #4312–13.

### 1. Preparation

The Coxes argue that the many similarities among the four retail experts' expert reports, including the type face and near-identical language, suggest that "the opinions were not prepared by the 'experts'" in violation of Federal Rule of Civil Procedure 26(a)(2)(B). Doc. #251 at PageID #4310. Ronaldo does not dispute that the language of the opinions was drafted by its attorney. But, it argues that the reports were "prepared and signed" within the meaning of this Court's Local Rules and that no report was required from the retail experts. Doc. #276 at 17–18.

#### *a. Compensation*

Federal Rule of Civil Procedure 26(a)(2)(B) requires the disclosure of a written report "if the witness is one retained or specially employed to provide expert testimony in the case …." Ronaldo argues that no expert report was required because the retail experts were not compensated for their work and, therefore, were not "retained or specially employed." Doc. #276 at 17. Ronaldo, however, cites no case law for the proposition that an expert is only retained if he is compensated. While there is some authority to the contrary,[5] "courts have ruled that a party is not exempt from the disclosure and report requirement for a witness who will give expert testimony simply because the witness is not monetarily compensated. It is the nature of the testimony rather than the compensation that determines whether a witness is exempt from the disclosure and report requirements." 6 MOORE'S FEDERAL PRACTICE § 26.23[2][a][i]. Thus, the disclosure requirement depends on the normal Rule 26(a)(2)(b) inquiry—whether the "expert will give an opinion based on "facts beyond those observed in the expert's non-retained role." *Cooper v. Meritor, Inc.*, No. 4:16-cv-52, 2018 WL 2451833, at \*6 (N.D. Miss. May 31, 2018).

Here, because each of the retail experts purported to rely on "documents … from discovery

---

[5] *See, e.g., Young v. United States*, 181 F.R.D. 344, 346 (W.D. Tex. 1997) ("They have not been specifically retained to develop expert opinions, as neither the Plaintiffs nor the Defendant has paid them to become experts for purposes of this litigation.").

17

in this case,"[6] it is clear their opinions were based on more than facts observed in their non-retained roles. Accordingly, they are properly designated as retained experts and are, therefore, subject to the report requirement.

### b. "Prepared and signed"

Federal Rule of Civil Procedure 26(a)(2)(B) requires that an expert report be "prepared and signed" by the expert. The preparation requirement is satisfied if the expert "substantially participated in the preparation" of the document. *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573, 579 (W.D. Tenn. 2009); *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, No. 4:15-cv-766, 2017 WL 3388020, at *2 (E.D. Tex. Aug. 3, 2017). Local Rule 26(a)(2) requires that parties comply with the disclosure requirements of Federal Rule 26(a) and provides that "[f]or purposes of this section, a written report is 'prepared and signed' by the expert witness when the witness executes the report after review."

While each retail expert report here contains distinct biographical and qualifications sections, the opinion sections of the reports are virtually identical. Each opinion section contains near-verbatim language, identical conclusions, and the same images. The reports also appear to be in the same font and were apparently all executed on the same day (October 22, 2018). Under these circumstances, there is simply no indication that the retail experts substantially participated in the preparation of their respective reports. In the absence of any evidence that this failure was substantially justified or harmless, exclusion of the testimony and opinions is warranted.[7] *City of Dyersburg*, 256 F.R.D. at 579.

---

[6] *See* Doc. #250-6 at PageID #4245; Doc. #250-7 at PageID #4270; Doc. #250-8 at PageID #4280; Doc. #250-9 at PageID #4291.

[7] The Court rejects Ronaldo's suggestion that compliance with Local Rule 26(a) satisfies Federal Rule 26(a). First, Local Rule 26(a)'s preparation and signature standard refer only to "this section," not to the Federal Rule. More important, a local rule may not conflict with a Federal Rule of Civil Procedure. Fed. R. Civ. P. 83(a)(1). Accordingly, to the extent Local Rule 26(a) would allow admission of a report violative of Federal Rule 26, it is improper. Regardless, there is no indication that any of the retail experts reviewed the reports prior to signature.

### 2. Remaining arguments

Having found the store owners' reports and testimony must be excluded because, among other things, their reports were not prepared by them, the Court declines to consider the Coxes' remaining arguments for exclusion.

## IV
## Conclusion

The Coxes' *Daubert* motion [250] is **GRANTED in Part and DENIED in Part**. The *Daubert* motion is GRANTED to the extent it seeks exclusion of the legal opinions included in Holt's report; Ford's opinions on the level of the Coxes' online presence; Reuther's opinions on the secondary meaning of Ronaldo's products; and the opinions and testimony of the store owners. The *Daubert* motion is DENIED in all other respects.

The Coxes' motion to strike [291] is **GRANTED in Part and DENIED in Part**. The motion to strike is GRANTED to the extent the Court will not consider for summary judgment purposes Reuther's opinions on the secondary meaning of Ronaldo's products, and the opinions and testimony of the store owners. The motion to strike is DENIED in all other respects.

**SO ORDERED**, this 6th day of March, 2020.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**