**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**RONALDO DESIGNER JEWELRY, INC.**                  **PLAINTIFF**

**V.**                                                                                               **NO. 1:17-CV-2-DMB-DAS**

**JAMES B. COX and CATHERINE A. COX
d/b/a JC DESIGNS d/b/a WIRE N RINGS
and JOHN DOE a/k/a LEROY and JOHN
DOES Numbers 1 through 99**                                             **DEFENDANTS**

## ORDER

This intellectual property case is before the Court on Ronaldo Designer Jewelry, Inc.'s motion to strike "improper" lay opinions of three witnesses—Juan Velez, John Darlin, and Janice Chambers Etz. Doc. #272.

**I
Procedural History**

On April 28, 2017, Ronaldo Designer Jewelry, Inc. filed a second amended complaint in this case against James B. Cox and Catherine A. Cox d/b/a JC Designs d/b/a Wire N Rings, John Doe a/k/a Leroy, and John Does Numbers 1 through 99, alleging claims for copyright infringement (Count One), trade dress infringement and unfair competition under the Lanham Act (Count Two), and unfair trade practices and unfair competition under Mississippi law (Count Three). Doc. #82.

On May 12, 2017, the Coxes answered the complaint. Doc. #87. The Coxes' answer includes counterclaims for trademark infringement (Counterclaim One), false designation (Counterclaim Two), various forms of declaratory relief (Counterclaims Three through Eight), unfair competition (Counterclaim Nine), unjust enrichment (Counterclaim Ten), unfair competition under Mississippi common law (Counterclaim Eleven), tortious interference with actual business relations (Counterclaim Twelve), tortious interference with prospective business relations (Counterclaim Thirteen), deceptive trade and business practices (Counterclaim

Fourteen), and "defamation/slander" (Counterclaim Fifteen). *Id.* at 27–48.

Following a period of discovery, the Coxes, on January 30, 2019, filed a motion for summary judgment on some claims. Doc. #253. Two weeks later, Ronaldo filed a motion to strike three affidavits the Coxes offer in support of their motion for summary judgment. Doc. #272. The motion to strike is fully briefed. Docs. #302, #304.

## II
## Analysis

Ronaldo moves to strike the affidavits of Juan Velez, John Darlin, and Janice Chambers Etz "in their entirety as they are impermissible expert opinion testimony." Doc. #273 at 2 n.1. In the alternative, Ronaldo asks the Court to strike certain paragraphs of the affidavits as improper summary judgment evidence. *Id*. at 10–17.

### A. Velez Affidavit

The Coxes submitted an affidavit from Juan Velez, a wire artist with approximately forty years of experience in the industry. Doc. #254-1 at ¶ 2. Although Ronaldo contends Velez's entire affidavit "is premised on his expertise," it argues that "particularly egregious" examples of improper lay testimony are in paragraphs 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, and 19. Doc. #273 at 2–5. It claims some of the paragraphs are also inadmissible on other grounds. *Id*. at 10–15.

"When moving to strike an affidavit, the movant cannot rely on a broad allegation of inadmissibility. The motion must specify which statements are inadmissible and set forth specific reasons for their inadmissibility." *In re Holsinger*, 437 B.R. 260, 267 (Bankr. S.D. Ohio 2010) (citation omitted). Accordingly, the Court will confine its analysis to the portions of the affidavit specifically challenged by Ronaldo.

Pursuant to Federal Rule of Evidence 701, a witness not testifying as an expert may not offer testimony in the form of an opinion unless the opinion is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in

2

issue; and (c) not based on scientific, technical, or other specialized knowledge ….." Put differently, "[a] lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the jury." *United States v. Ebron*, 683 F.3d 105, 137 (5th Cir. 2012). "The requirement that lay opinion be based on the perception of the witness imports into Rule 701 the personal knowledge standard of Rule 602." 29 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 6254 (2d ed. 1987). Thus, a witness may not base his opinion, "even in part" on matters perceived by others. *Id.* Beyond the personal knowledge requirement, "[t]he distinction between lay and expert testimony is that lay testimony results from a process of reasoning familiar in everyday life, whereas expert testimony results from a process of reasoning that can only be mastered by specialists in the field." *United States v. York*, 600 F.3d 347, 360–61 (5th Cir. 2010).

### 1. Velez's Paragraph 8

The portion of Velez's Paragraph 8 challenged by Ronaldo states:

> The [tapered wire] clasp, although traced back to me from the 1980s, is not specific to any wire artist or company because dozens of wire artists throughout the United States and around the world use the tapered clasp for their wire bracelets. Consequently, customers– based solely on looking at the clasp - would not be able to pinpoint who made that particular bracelet for that clasp.

Doc. #254-1 at ¶ 8. Ronaldo argues:

> Paragraph 8 of Mr. Velez's Affidavit makes the broad statement that Ronaldo's clasp is not specific to a specific wire artist or company and that, as a consequence, customers would not be able to pinpoint who made the clasp by simply looking at it. What Mr. Velez has testified to here is nothing more than his opinion, which as a person with specialized knowledge of the wire crafting industry, is impermissible expert testimony. Further, Mr. Velez's generalization that no customer could look at the Ronaldo clasp and determine that Ronaldo made the bracelet is inadmissible testimony as it is impermissible expert opinion testimony, is conclusory, and is not supported by any evidence. Consequently, this paragraph should be stricken.

Doc. #273 at 11.

Beyond factual assertions about the history of the clasp, Velez's Paragraph 8 contains two

3

separate opinions: (1) that the tapered clasp is not associated with a brand because the clasp has been used often by many artists; and (2) because the clasp is not associated with a specific brand, customers could not determine the source of a product based on the clasp.

To the extent Velez avers that he created the clasp and that he was personally aware of others using the clasp, the history of the clasp falls within his personal perception. Similarly, the opinions derived from these personally perceived facts do not require a specialized process of reasoning. To the contrary, the method of reasoning (that because many people use the clasp, the clasp is not associated with a brand and, therefore, it would be difficult to determine the source based purely on the clasp) is one that would be familiar in everyday life. While the strength of this reasoning is certainly subject to question, the Court does not find it so attenuated as to be irrational and thus inadmissible under Rule 701. Finally, to the extent the distinctiveness of the clasp is at issue in this case, the Court finds that the opinions would be helpful to the trier of fact. Accordingly, the challenged opinions in Paragraph 8 are permissible lay opinions.[1]

## 2. Velez's Paragraph 9

Velez's Paragraph 9 states:

> I am aware that Mr. Cox and Mr. Needham through his company Ronaldo Designer Jewelry ("Ronaldo") each has been using the tapered clasp in their respective businesses for at least eighteen years. This further supports that the tapered clasp cannot represent a single artist.

Doc. #254-1 at ¶ 9.

Ronaldo does not dispute the underlying factual statement (that both Cox and Ronaldo utilize the tapered clasp at issue) but argues that the "statement is an opinion not offered by a lay person, but by a person with specialized knowledge in the field of wire crafting and who should have been designated as an expert. Moreover, this statement is nothing more than an unsupported

---

[1] The Court expresses no opinion at this time on the relevance of such an opinion to the issue of secondary meaning (ostensibly the purpose for which the opinion is offered), which is "primarily an empirical inquiry." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 544 (5th Cir. 2015).

conclusory statement, which is not admissible in evidence." Doc. #273 at 11. For the same reasons stated in the analysis of Velez's Paragraph 8, the Court finds the opinion in Velez's Paragraph 9 is an admissible lay opinion under Rule 701.

### 3. Velez's Paragraph 11

Velez's Paragraph 11 states:

> Years ago, many of the experienced wire artists in the industry frequently taught and showed common wire bracelet designs and techniques to other wire artists. From my experience and observation in the industry, using pattern wire for bracelets have [sic] at least 2-4 wires around the pattern wire is common. Over the last twenty-plus years, I have seen various wire artists make and/or selling pattern wire bracelets. I make my own custom pattern wire, but I am aware that pattern wire can be purchased from suppliers such as Rio Grande.

Doc. #254-1 at ¶ 11.

Ronaldo argues that the opinion expressed in this paragraph—that the use of pattern wires with "at least 2-4 wires around the pattern wire" is common in the wire jewelry industry—is an improper expert opinion. This Court disagrees. "Lay witnesses may express certain opinions about … industry practices so long as the testimony is based on personal knowledge." *United States v. Thompson*, 229 F. Supp. 3d 91, 93 (D. Mass. 2017). To the extent Velez based this opinion of the general industry practice of utilizing two to four wires around a pattern wire on his personal observations, it is proper testimony under Rule 701.

### 4. Velez's Paragraph 12

Velez's Paragraph 12 states:

> From my experience and observation in the industry, using windows with wire bracelets wherein decorative items can be added to or inserted through it is common. I have used beads in a window for wire bracelets since the 1980s, as is reflected in the *Incahoots* brochure. Because of its function and my familiarity with its structure, I continue to use the tapered clasp for wire bracelets. When comparing someone else's pattern wire designs and 3-5 strand window designs, there are a limited number of options of expressing the desired simplistic and streamlined design features.

Doc. #254-1 at ¶ 12.

5

Ronaldo argues that this is improper expert opinion and that the opinion is otherwise improper because Velez "uses as the basis for his opinions in this paragraph the *Incahoots* brochure, which was not attached and which he cannot authenticate." Doc. #273 at 12. The Coxes argue that the opinion is proper lay testimony and that while the "*Incahoots* brochure was inadvertently omitted as an exhibit, however, this same brochure was authenticated by [another witness]." Doc. #302 at 5.

While the Coxes are correct that an *Incahoots* brochure has been authenticated by prior evidence, they offer no evidence which would suggest that the *Incahoots* brochure referenced by Velez is the same brochure that is in the record. In the absence of such evidence, the Court cannot conclude that the brochure in the record is the one Velez references. Accordingly, the reference to the brochure is of no evidentiary value. Regardless, to the extent the brochure itself is not relied on in Velez's Paragraph 12, the reference to the missing document does not undermine Paragraph 12 as a whole. Nevertheless, the Court agrees with Ronaldo that Velez's opinions in this paragraph are inadmissible.

The various opinions in Velez's Paragraph 12 relate to observations about the form and function of elements of jewelry. Unlike the opinions described above, the reasoning behind these opinions would not be familiar to an average person. Rather, the opinion is clearly derived from Velez's specialized knowledge regarding jewelry design. *See Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*, 716 F. App'x 5, 11 (2d Cir. 2017) ("The District Court permissibly concluded that, although both declarants had familiarity with their programs because of their experience as CEOs, the reasoning processes on which they relied to analyze these programs and situate them in the industry as a whole were not simply those of CEOs describing their products based on personal experience, but those of experts with technical knowledge of software design and specialized knowledge of industry standard."). Accordingly, Velez's Paragraph 12 is

6

properly excluded.

### 5. Velez's Paragraph 13

Velez's Paragraph 13 states:

> At least around 2007 or 2008, I meet [sic] Ronnie Needham in Louisville, Kentucky during an event in which I participated by showing my jewelry. I had noticed that some people who appeared to be working with Mr. Needham were visiting my booth to examine my jewelry in what appeared to be an attempt to copy my work. Had they only been upfront with their intentions to copy work, we may not have had a confrontation. During our confrontation, Mr. Needham told me that he had copyrighted my jewelry designs and that he would try to stop me from making my own jewelry. We had a heated conversation where I informed Mr. Needham that I had been in business making and selling the wire bracelets for which he claimed to now own since the 1980s – long before he entered the industry, and that he was grossly misinformed on wire jewelry designs.

Doc. #254-1 at ¶ 13.

Ronaldo argues the facts supported in this paragraph are irrelevant because the Coxes did not reference the facts in their summary judgment briefing. Doc. #273 at 13. The Coxes do not argue that the facts were not mentioned in the briefing but argue that the paragraph is relevant because it supports the argument that Needham was copying bracelet designs. Doc. #302 at 5–6.

The Court agrees that Velez's opinion that Needham was attempting to copy his work is an inadmissible opinion. "Courts often have permitted lay witnesses to express opinions about the motivation or intent of a particular person if the witness has an adequate opportunity to observe the underlying circumstances." *Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.*, 865 F.2d 1461, 1466 (5th Cir. 1989). However, "[w]hen a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701." *United States v. Rea*, 958 F.2d 1206, 1216 (2d. Cir. 1992). Because Velez has offered no objective bases for his opinion that Ronaldo was attempting to copy his work, the speculation is inadmissible.

As for the remaining portions of Velez's Paragraph 13—factual assertions regarding

interactions between Velez and Needham—the Court declines at this time to decide the issue of relevance. Should the statement prove relevant to the disposition of the summary judgment issues, they will be considered. If the statements are irrelevant, they will be disregarded. *See Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 163 (E.D.N.Y. 2012) ("Rather than scrutinizing each line … the Court, in its analysis of the motion for summary judgment, will only consider relevant evidence that is admissible.").

### 6. Velez's Paragraph 14

Velez's Paragraph 14 states, "I have seen Mr. Needham's Gold Craft Fashions catalog with the brown background, and find that the layout and the jewelry designs to be a substantial similar copy of my *Incahoots* brochure." Doc. #254-1 at ¶ 14. Ronaldo argues that the statement is irrelevant because it is not mentioned in the Coxes' summary judgment briefing. Doc. #273 at 13. As with Velez's Paragraph 13, the Court declines to address the issue of relevancy at this time.

### 7. Velez's Paragraph 15

Velez's Paragraph 15 states:

> I have examined some of Mr. Needham's work from his company and find the thin wire materials being used to be flimsy. I have seen Ronaldo's window bracelet called Power of Prayer and its pattern wire bracelet called Angelina. Both of those jewelry designs, without more, are commonplace and are substantially similar to others in the industry. Ronaldo adds nothing particularly creative to either of these jewelry designs. I have seen Ronaldo's tapered clasp and find it to be an imitation of the clasp I have used since the 1980s.

Doc. #254-1 at ¶ 15.

Ronaldo argues the paragraph contains impermissible expert testimony and irrelevant factual assertions. Doc. #273 at 13–14. Once again, the Court declines to make a relevancy determination at this time. However, the Court agrees that the opinions in Velez's Paragraph 15 (that Ronaldo uses flimsy wire materials, that various aspects of Ronaldo's designs are common,

8

and that Ronaldo's designs are uncreative) are all grounded in expertise and, therefore, fall outside the scope of Rule 701.

### 8.  Velez's Paragraph 16

Velez's Paragraph 16 states: "Mr. Needham was acutely aware of my existence in the wire industry long before 2012, and he was aware that I and others frequently use the tapered clasp in our respective lines of wire bracelets."  Doc. #254-1 at ¶ 16.  Ronaldo argues this is inadmissible speculation.  Doc. #273 at 14.  Because Velez has failed to explain the bases for his opinions regarding of what Needham was aware, the Court agrees that Velez's Paragraph 16 is impermissible speculation and must be excluded.

### 9.  Velez's Paragraphs 17, 18, 19

Velez's Paragraphs 17, 18, and 19 provide:

> 17. I have spoken to some of the individuals harmed by Mr. Needham and his company's efforts to stop other wire artists in the industry from making and selling common bracelet designs and the functional tapered clasp. Mr. Needham and his company should be ashamed of themselves for trampling over unsuspecting wire artists who may not be aware of the beautiful history of simple bracelet designs commonly found in wire jewelry. Ronaldo should not be rewarded in its efforts to monopolize our craft.
>
> 18. After Mr. Needham threatened to take my livelihood away from me, I realized that he, nor the company that bears his stage name, can be trusted. Ronaldo is harming the industry and engaging in unfair competition. Ronaldo should be stopped from claiming ownership to the functional clasp that I introduced to people around the United States in the 1980s. Ronaldo should also be stopped from claiming exclusive copyright ownership to the common window and pattern wire bracelet designs.
>
> 19. I respectfully request that the Court put an end to the tirade of misinformation and bullying tactics put forth by Ronaldo against Mr. Cox and against other legitimate wire artists in this industry.

Doc. #254-1 at ¶¶ 17–19.

Ronaldo argues these paragraphs are irrelevant and unsubstantiated.  Doc. #273 at 15. The Court agrees.  At their heart, they are simply inadmissible legal opinions that the Court should

9

rule in the Coxes' favor.

### 10. Summary

Regarding Velez's affidavit, the motion to exclude will be granted to the extent it seeks exclusion of the opinions in Velez's Paragraphs 12, 15, 16, 17, 18, and 19, and the opinion in Paragraph 13 that Needham was attempting to copy Velez's work. The motion will be denied in all other respects.

### B. Darlin and Etz Affidavits

The affidavits of Janice Chambers Etz and John Darlin, both manufacturers, distributors, and sellers of wholesale and retail jewelry, are virtually identical in substance. *See* Docs. #254-6, #254-7. The parties analyzed the affidavits together.[2] This Court will as well.

#### 1. Darlin's Paragraph 5 and Etz's Paragraph 4

Darlin's Paragraph 5 states:

> I have seen numerous bracelet and jewelry designs for over twenty-eight (28) years, including classic designs passed down from or inspired by wire artists from the 1970s and 1980s. Many of these basic designs are independently created. In the art of wire wrapping jewelry, including bracelets, certain designs are basic, functional, and not original.

Doc. #254-6 at ¶ 5. Etz's Paragraph 4 similarly provides, "I have seen numerous bracelet designs for over thirty (30) years, including classic designs passed down from or inspired by wire artists from the 1970s and 1980s. In the art of wire wrapping bracelets, certain designs are basic, functional, and not original." Doc. #254-7 at ¶ 4. Ronaldo argues these are expert opinions and, therefore, are improper as lay opinion. Doc. #273 at 15–16.

As explained above, a lay witness may not offer an opinion on the functionality or originality of jewelry design because such opinions involve modes of reasoning unfamiliar to a normal person. The opinions in Darlin's Paragraph 5 and Etz's Paragraph 4 are therefore

---

[2] Ronaldo sought exclusion of the affidavits in their entireties. For the reasons above, the Court analyzes only the specific objections lodged by Ronaldo.

10

inadmissible.

### 2. Darlin's Paragraph 6 and Etz's Paragraph 5

Darlin's Paragraph 6 states:

> I have reviewed photographs of Plaintiff's THE ANGELINA bracelet, the stepped or tapered clasp used with Plaintiff's bracelets, and THE POWER OF PRAYER bracelet. Many functional styles, such as a wrapped clasp at the end of wire bracelets, can be easily and independently created. This tapered or stepped wrapped clasp is not specific to a particular wire artist. For example, I saw Juan Velez using this clasp in the late 1980s and he told me he had been making wire wrapped jewelry for many years before 1989. I have also seen Mr. Velez multiple strand wire woven or braided bracelets with tapered or stepped clasp, and his bracelets predate Plaintiff's owner Ronnie Needham's use of the tapered clasps. When I interacted with Mr. Velez in the late 1980s and early 1990s, he was traveling and showing at various shows in central and southern United States.

Doc. #254-6 at ¶ 6.

> Etz's Paragraph 5 states:
>
> I have reviewed photographs of Plaintiff's THE ANGELINA bracelet, the stepped or tapered clasp used with Plaintiff's bracelets, and THE POWER OF PRAYER bracelet. Many functional styles, such as a wrapped clasp at the end of wire bracelets, can be easily and independently created. For example, in a WIRE WORKS brochure that I have owned from about 1986, at least jewelry items B3, B5 B11, B14, B29 B36-39 and B41-B44 appear to have the same or similar expression of designs to Plaintiff's purported original works; however, these works predate Plaintiff.

Doc. #254-7 at ¶ 5.

Ronaldo argues these opinions are not based on personal knowledge and otherwise contain expert opinions. Doc. #273 at 16. The Coxes respond that "[e]ach witness testified that to either seeing or making the clasp or to witnessing others making the clasp" and that a lay person should be able to compare pieces of jewelry. Doc. #302 at 7.

While a lay witness, under certain circumstances, may identify a photographic image, the witness, consistent with Rule 701's perception requirement, may not offer an opinion *based on the image*. For example, a lay witness may identify a person in a surveillance photograph. *Ebron*, 683 F.3d at 137. However, a lay witness may not be shown a photograph of a crack in order to

11

testify about the cause of the crack. *See C. Itoh & Co. (Am.), Inc. v. M/V Hans Leonhardt*, 719 F. Supp. 514, 514–15 (E.D. La. 1989).

Here, it is clear Darlin and Etz were shown the photographs of Ronaldo's bracelets for the purpose of opining about the bracelets, not merely identifying them. To the extent Darlin and Etz's opinions are based on the photographs, rather than their personal perceptions of the jewelry, the testimony falls outside the scope of Rule 701. Furthermore, to the extent Darlin and Etz attempt to opine about the functionality of the clasp, such testimony also falls outside Rule 701's ambit.

### 3. Darlin's Paragraph 12 and Etz's Paragraph 13

Darlin's Paragraph 12 states:

> The following expression of a window bracelet is not specific to a single wire artist and is commonly, independently created: a wire bracelet having three horizontal wires, wherein the window is formed from an upper wire and a lower wire, and wherein the beads (or other decorative items) are threaded onto a middle wire.

Doc. #254-6 at ¶ 12. Etz's Paragraph 13 is identical. *See* Doc. #254-7 at ¶ 13.

Ronaldo argues that these paragraphs "opine facts that can only be made with the special skill and knowledge that Mr. Darlin and Ms. Etz testify they have obtained …. These [a]re not the opinions of lay witnesses and must be stricken." Doc. #273 at 16–17.

While, as explained above, a lay witness may proffer an opinion comparing the general appearance of pieces of jewelry, these opinions go beyond such a comparison. Unlike Velez, Darlin and Etz do not merely opine that they have observed various artists use a tapered clasp and that, therefore, the clasp cannot be associated with a single artist. Rather, the challenged opinions, without any explanation of reasoning, state that the clasp is "commonly [and] independently created." The creation process of a piece of jewelry clearly extends beyond the reasoning of a person used in everyday life. Accordingly, Darlin's Paragraph 12 and Etz's Paragraph 13 are inadmissible under Rule 701.

### 4. Darlin's Paragraph 16 and Etz's Paragraph 19

Darlin's Paragraph 16 states:

> Many of the jewelry items shown in Plaintiff's Gold Craft "brown" catalog are basic, classic designs, and also appear to be derivatives of existing works that were created by others. As a "master jeweler," Mr. Ronnie Needham would, or at least should, be aware of the history of wire wrapping and common techniques and patterns.

Doc. #254-6 at ¶ 16. Etz's Paragraph 19 is identical. *See* Doc. #254-7 at ¶ 19.

Ronaldo argues these statements "are conclusory as there is no support for the statements" and that "they are not proper lay witness opinions as they require specialized knowledge of the wire crafting industry." Doc. #273 at 17. The Coxes respond that "[i]t would be admissible for a lay person viewing two different brochures to opine that the designs in the brochures look similar to what they have personally seen or made." Doc. #302 at 8.

This Court agrees with Ronaldo that the opinions extend far beyond a mere comparison of two images. Rather, the challenged paragraphs involve opinions that one piece of jewelry is "derivative" of another and what a "master jeweler" would or should be aware of. These opinions necessarily involve reasoning processes particular to the field of jewelry design and, therefore, are inadmissible under Rule 701.

### 5. Darlin's Paragraph 18 and Etz's Paragraph 21

Darlin's Paragraph 18 states that "[s]ome basic styles like Plaintiff's expression of its beads-within-a-window bracelet pattern (THE POWER OF PRAYER) and the wire pattern insert (THE ANGELINA) can be independently created and self-taught." Doc. #254-6 at ¶ 18. Etz's Paragraph 21 is identical. Ronaldo argues these opinions are conclusory and outside the scope of Rule 701. Doc. #273 at 17.

As explained above, testimony about the creation process of jewelry designs is inadmissible under Rule 701. Furthermore, as also explained above, Darlin and Etz lack the

13

requisite personal knowledge to opine on Ronaldo's designs. Accordingly, these paragraphs are inadmissible.

### 6. Darlin's Paragraph 20 and Etz's Paragraph 23

Darlin's Paragraph 20 states that "[i]f the functional stepped or tapered clasp were not used at the end of the bracelet before the hook and/or eye closure, then the components forming the bracelet would not be complete and would be unusable." Doc. #254-6 at ¶ 20. Etz's Paragraph 23 is nearly identical.[3] Doc. #254-7 at ¶ 23. Ronaldo once again contends these opinions are inadmissible under Rule 701. Doc. #273 at 17.

Because opinions on the functionality of jewelry design may not be introduced as lay opinions, these paragraphs are inadmissible.

### 7. Summary

Regarding the affidavits of Darlin and Etz, the motion to exclude will be granted to the extent it seeks exclusion of the opinions in Darlin's Paragraphs 5, 6, 12, 16, 18, and 20, and Etz's Paragraphs 4, 5, 13, 19, 21, and 23. The motion will be denied in all other respects.

### III
### Conclusion

In accordance with the rulings above, Ronaldo's motion to strike [272] is **GRANTED in Part and DENIED in Part**.

**SO ORDERED**, this 6th day of March, 2020.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[3] Etz's Paragraph 13 refers to a "loop" rather than an "eye closure." *Compare* Doc. #254-7 at ¶ 23 *with* Doc. #254-6 at ¶ 20.

14